**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Gardford HAIRSTON,
Jr., Defendant–Appellant.**

**No. 94–5829.**

United States Court of Appeals,
Fourth Circuit.

Argued: Nov. 3, 1995.

Decided: Dec. 8, 1995.

**ARGUED:** William Stimson Trivette, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Michael Francis Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** William E. Martin, Federal Public Defender, Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.

Before MURNAGHAN, NIEMEYER, and HAMILTON, Circuit Judges.

Affirmed by published opinion. Judge HAMILTON wrote the opinion, in which Judge MURNAGHAN and Judge NIEMEYER joined.

OPINION

HAMILTON, Circuit Judge:

Robert Hairston (Hairston) appeals his sentence following his plea of guilty to violating 18 U.S.C.A. § 922(g)(1) (West Supp.1995) on the sole ground that he did not have three previous convictions that qualified as violent felonies for purposes of the sentencing enhancement under the Armed Career Crimi-

nal Act (ACCA), *see* 18 U.S.C.A. § 924(e) (West Supp.1995). Because we conclude Hairston's 1979 conviction for felony escape from custody under North Carolina General Statute § 148–45(b)(1) "involves conduct that presents a serious potential risk of physical injury to another," *see* 18 U.S.C.A. § 924(e)(2)(B)(ii) (West Supp.1995), we affirm Hairston's sentence.

## I.

On February 28, 1993 and on March 7, 1993, Hairston committed armed robbery of two different persons in North Carolina. Subsequently, on May 17, 1993, Hairston entered the apartment of a woman that he did not know, and using the woman's pistol, brutally raped and beat her. Hairston was apprehended the following day with the woman's pistol hidden in the crotch of his pants. Upon his arrest, the State of North Carolina charged Hairston with first-degree rape and larceny of the woman's pistol.

After Hairston's arrest, he was placed in state custody and indicted by the State of North Carolina on two counts of armed robbery for his armed robberies on February 28 and March 7, 1993. On October 28, 1993, Hairston pled guilty to both counts of armed robbery and was sentenced to twenty years. On December 17, 1993, Hairston entered an *Alford* plea[1] to second-degree rape for his conduct on May 17, 1993. He was sentenced to forty years' imprisonment, to run consecutive to his twenty-year sentence for the two armed robberies.

Hairston's troubles were not over yet. On April 25, 1994, Hairston was indicted by a federal grand jury for the instant offense, possession of a firearm by a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," *see* 18 U.S.C.A. § 922(g)(1) (West Supp.1995) (Count I), and for possession of a stolen firearm, *see* 18 U.S.C.A. § 922(j) (West Supp.1995) (Count II). These charges stemmed from the rape incident. Pursuant to a plea agreement, Hairston pled

guilty to Count I, and the district court dismissed Count II.

At Hairston's sentencing on October 21, 1994, the government offered the following convictions for purposes of showing Hairston had three previous convictions that qualified as violent felonies for purposes of the sentencing enhancement under the ACCA: (1) assault with a deadly weapon inflicting serious injury, 1976; (2) escape from custody while serving a sentence imposed upon conviction of a felony, 1979;[2] (3) assault with a deadly weapon inflicting serious injury, 1984; (4) failure to return from prison furlough, 1989; (5) armed robbery, 1993; and (6) armed robbery, 1993. Over Hairston's objection, the district court determined that three of these convictions constituted violent felonies, and thus qualified as predicate convictions under the ACCA. In making this determination, the district court counted both convictions for assault with a deadly weapon inflicting serious injury and, without specifying which, one of the convictions for armed robbery, or alternatively, without specifying which, either the conviction for escape from custody while serving a sentence imposed upon conviction of a felony or the conviction for failure to return from prison furlough. Hairston conceded that his two convictions for assault with a deadly weapon inflicting serious injury qualified as predicate convictions under the ACCA, but asserted that no others qualified as the third predicate conviction necessary for the sentencing enhancement under the ACCA.

Applying the sentencing enhancement under the ACCA, Hairston had a base offense level of thirty-four.[3] *See* USSG § 4B1.4. The district court then reduced Hairston's base offense level to thirty-one due to his acceptance of responsibility. *See* USSG § 3E1.1. Hairston had a criminal history category of six, which combined with his base offense level of thirty-one to produce a sentencing range of 188 to 235 months' imprisonment. Concluding this sentencing range

---

**1.** *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**2.** *See* N.C.Gen.Stat. § 148–45(b)(1).

**3.** Without the enhancement, Hairston's base offense level was calculated at twenty-seven. *See* USSG §§ 2K2.1(c), 2A3.1.

did not adequately take into consideration the extreme psychological injury suffered by the victim, *see* USSG § 5K2.3, or the extreme nature of Hairston's conduct, *see* USSG § 5K2.8, the district court departed upward to offense level thirty-five. The upward departure produced a sentencing range of 292 to 365 months' imprisonment; the district court sentenced Hairston to 360 months. Hairston noted a timely appeal of his sentence.

## II.

Hairston challenges his sentence on the sole ground that none of his other convictions qualified as the third predicate conviction necessary to enhance his sentence under the ACCA. Without deciding whether Hairston's remaining convictions would qualify, we hold that Hairston's 1979 felony conviction for escape while serving a sentence imposed upon a conviction of a felony (felony escape from custody), *see* N.C.Gen.Stat. § 148–45(b)(1) (1987), qualifies as his third predicate conviction under the ACCA.

If a defendant is convicted of violating § 922(g), the ACCA directs the district court to look at the defendant's criminal history, and if appropriate, increase his sentence from the otherwise normal ten year maximum under § 924(a)(2) to a mandatory minimum of fifteen years to life. *See* 18 U.S.C.A. § 924(e) (West Supp.1995). A defendant is eligible for the enhancement if he "violates section 922(g) ... and has three previous convictions ... for a violent felony or serious drug offense, or both, committed on occasions different from one another." 18 U.S.C.A. § 924(e)(1) (West Supp.1995). Under the ACCA, the term "violent felony" means:

> any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, and involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another;* ....

18 U.S.C.A. § 924(e)(2)(B) (West Supp.1995) (emphasis added).

■ Turning to Hairston's 1979 conviction for felony escape from custody, we learn that felony escape from custody in North Carolina does not have as an element of the crime the use, attempted use, or threatened use of physical force against another. *See State v. Malone,* 73 N.C.App. 323, 326 S.E.2d 302, 302–03 (1985) (stating that the elements of felony escape from custody in North Carolina are: "(1) lawful custody, (2) while serving a sentence imposed upon a plea of guilty, a plea of *nolo contendere,* or a conviction for a felony, and (3) escape from such custody."). Furthermore, felony escape from custody in North Carolina does not constitute one of the specifically named crimes in § 924(e)(2)(B)(ii). Therefore, the question becomes whether it satisfies the "otherwise clause" of § 924(e)(2)(B)(ii). Whether a conviction satisfies this clause "is determined by a categorical approach, whereby the court looks only at the fact of conviction and the statutory definition of the offense, and not to the underlying facts of a specific conviction." *United States v. Thomas,* 2 F.3d 79, 80 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994) (citing *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990)). Under this approach, we must make "common-sense judgments about whether a given offense proscribes generic conduct with the potential for serious physical injury to another." *United States v. Custis,* 988 F.2d 1355, 1363 (4th Cir.), *cert. granted on other grounds,* —— U.S. ——, 114 S.Ct. 299, 126 L.Ed.2d 248 (1993), *and aff'd,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994).

■ Applying the prescribed categorical approach to a conviction for felony escape from custody in North Carolina, *see* N.C.Gen.Stat. § 148–45(b)(1), we conclude that it "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C.A. § 924(e)(2)(B)(ii) (West Supp.1995). In North Carolina, "[a] prisoner serving a sentence imposed upon conviction of a felony," N.C.Gen.Stat. § 148–45(b)(1), "who shall escape or attempt to escape from the [North Carolina] State prison system, shall ... be

punished as a Class J felon," N.C.Gen.Stat. § 148–45(b). No one could credibly dispute the contention that an overt escape, especially an overt escape from a maximum security prison, inherently presents a serious potential risk of physical injury to another. Hairston, however, centers his argument that felony escape from custody in North Carolina does not present a serious potential risk of physical injury to another on his assertion that the vast majority of felony escapes from custody in North Carolina are undertaken by stealth, and of those, most are from minimum security prisons.

Assuming the accuracy of Hairston's assertion for purposes of this appeal, we are unpersuaded that a different conclusion than we have reached is compelled. Critical to our conclusion is the chance that in the case of an escape by stealth, the escapee will be intentionally or unintentionally interrupted by another, for example a prison guard, police officer or ordinary citizen. This encounter inherently presents the serious potential risk of physical injury to another, because the escapee, intent on his goal of escaping, faces the decision of whether to dispel the interference or yield to it. To avoid jeopardizing the success of the escape and further punishment upon capture, the escapee may choose to dispel the interference by means of physical force. *Accord United States v. Aragon,* 983 F.2d 1306, 1313 (4th Cir.1993) ("The likelihood that physical force will be applied upon interruption of what originally had been planned as an escape of stealth is at least as great as that presented when a temporarily absent resident returns home and encounters a burglar."); *United States v. Payne,* 966 F.2d 4, 8 (1st Cir.1992) ("[R]isk of injury arises not from the completion of [a breaking and entering], but rather from the possibility that some innocent party may appear on the scene while the break-in is occurring.").

We find support for our conclusion in *Aragon,* 983 F.2d at 1313, where we addressed a similar question in the context of the Travel Act, 18 U.S.C.A. § 1952(a)(2) (West Supp. 1995). In *Aragon,* we held that the crime of attempting to rescue a prisoner or assisting in his escape, *see* 18 U.S.C.A. § 752 (West Supp.1995), by its nature creates a substantial risk of the possible use of physical force against the person or property of another, *see* 18 U.S.C.A. § 16(b) (West Supp.1995), and therefore, constitutes a crime of violence. *See Aragon,* 983 F.2d at 1313. In reaching this holding, we recognized that given the supercharged nature of the events surrounding an escape, "[i]n the event that an escape by stealth is discovered in progress by officials, there is an immediate and substantial risk that the situation will escalate to one involving physical force in an attempt to apprehend the escapee." *Id.* at 1313. Such reasoning applies with equal force to the crime of felony escape from custody in North Carolina. *See United States v. Gosling,* 39 F.3d 1140, 1142 (10th Cir.1994) (applying reasoning of *Aragon* to hold that the crime of felony escape from custody in North Dakota involves conduct that presents a serious potential risk of physical injury to another, and thus constitutes a crime of violence for purposes of career offender status under United States Sentencing Guideline § 4B1.1). Accordingly, looking not at the underlying facts of Hairston's conviction for felony escape from custody in North Carolina, *see* N.C.Gen. Stat. § 148–45(b)(1), but to the fact of conviction and the statutory definition of the offense, we hold that felony escape from custody in North Carolina constitutes a violent felony for purposes of sentencing enhancement under the ACCA.

### III.

Given our holding, we count Hairston's 1979 conviction for felony escape from custody in North Carolina, N.C.Gen.Stat. § 148–45(b)(1), as his third predicate conviction for sentencing enhancement under the ACCA. We, therefore, affirm Hairston's sentence.[4]

*AFFIRMED.*

---

**4.** Given our disposition, we need not decide     whether Hairston's remaining convictions would

have qualified as predicate convictions for pur-
poses of enhancing his sentence under the ACCA.