**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4818

JERRY LEE KEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-97-33)

Submitted: March 24, 1998

Decided: April 22, 1998

Before HAMILTON, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Matthew A. Victor, Charleston, West Virginia, for Appellant.
Rebecca A. Betts, United States Attorney, Stephen W. Haynie, Assis-
tant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jerry Lee Key was convicted pursuant to his conditional guilty plea to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1994), and was sentenced as an armed career criminal. He appeals his sentence arguing that he did not have three prior convictions that qualified as violent felonies for purposes of sentence enhancement under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C.A. § 924(e) (West Supp. 1998). Because we hold Key's previous conviction for felony escape constitutes a "violent felony," and therefore can serve as a third predicate offense for purposes of sentence enhancement under the ACCA, we affirm Key's sentence.

The facts are not in dispute. A grand jury indicted Key for possession of a firearm by a convicted felon. The indictment further alleged a violation of the ACCA on the basis that Key had been previously convicted of three violent felonies. The named prior convictions were two counts of unlawful wounding[1] and two separate instances of felony escape under W. Va. Code § 62-8-1 (1997). Key objected to the ACCA charge on the grounds that the first conviction for felony escape could not be considered a predicate offense for purposes of the ACCA because it was, under the circumstances, not a "violent felony."[2] At sentencing the court rejected Key's argument and sentenced Key under the ACCA to 210 months' imprisonment.

The issue before this court is whether Key's first conviction for felony escape under W. Va. Code § 62-8-1 constitutes a "violent felony" under the ACCA. A defendant is eligible for an enhancement in his sentence from the normal ten year maximum under § 924(a)(2) to a mandatory minimum of fifteen years to life if he "violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different

_____

[1] Both parties stipulated at sentencing that these two convictions would constitute one "prior violent felony."
[2] Key concedes that the other two convictions qualify as predicate offenses under the ACCA.

2

from one another." 18 U.S.C.A. § 924(e)(1) (West Supp. 1998). Under the ACCA, "violent felony" means:

> any crime punishable by imprisonment for a term exceeding one year . . . that--
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C.A. § 924(e)(2)(B) (West Supp. 1998).

In United States v. Hairston, 71 F.3d 115, 117 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3763 (U.S. May 13, 1996) (No. 95-8582), we held that felony escape from custody under North Carolina law "involves conduct that presents a serious potential risk of physical injury to another," and therefore such conviction could serve as a predicate violent felony for sentencing under the ACCA. In deciding whether felony escape under North Carolina law constitutes a "violent felony" in Hairston, we stated that the conviction, to satisfy the "otherwise" clause of § 924(e)(2)(B)(ii), must be "`determined by a categorical approach, whereby the court looks only at the fact of conviction and the statutory definition of the offense, and not to the underlying facts of a specific conviction.'" Id. (quoting United States v. Thomas, 2 F.3d 79, 80 (4th Cir. 1993)). A few months later, in United States v. Dickerson, 77 F.3d 774, 777 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3259 (U.S. Oct. 7, 1996) (No. 95-9207), we applied Hairston in determining that the crime of felony attempted escape from custody presented a serious potential risk of physical injury to another and as such qualified as a "crime of violence" under the Career Offender provision of the Sentencing Guidelines. In that decision, we restated that the analysis focuses on the conviction in the abstract, i.e., whether the nature of the crime involves a serious potential risk of physical injury to another. Id.; see also United States

3

v. NJB, 104 F.3d 630, 637-38 (4th Cir.), cert. denied, 65 U.S.L.W. 3754 (U.S. May 12, 1997) (No. 96-8663).

On appeal, Key contends that his first conviction for felony escape under West Virginia law was based on a failure to return to the work release center from a furlough, and by its nature cannot be considered a "violent felony." He posits that a mere failure to return cannot be considered as "violent" an offense as an overt escape from secured premises. He further directs the court's attention to the Hairston decision in which this court specifically declined to consider at that time whether a conviction for failure to return from prison furlough could be considered a "violent felony" for purposes of the ACCA. Hairston, 71 F.3d at 117.

Under § 62-8-1 of the Code of West Virginia, the section under which Key was convicted, the elements of felony escape are the following: (1) imprisonment or otherwise under the custody of the commissioner of corrections; and (2) killing, wounding, or inflicting other bodily injury upon an officer or guard of the penitentiary or medium security prison; or (3) breaking, cutting, or injuring any building, fixture or fastening of the prison, for the purposes of escaping or aiding any other convict to escape from the prison or rendering the premises less secure as a place of confinement; or (4) making, procuring, secreting, or possessing, any instrument, or other such object for such purpose, or with intent to kill, wound, or inflict bodily injury as aforesaid; or (5) resisting the lawful authority of an officer or guard of the penitentiary or premises for such purpose or with such intent. See W. Va. Code § 62-8-1 (1997). In Craigo v. Legursky, the Supreme Court of Appeals of West Virginia held that an inmate who is on work release remains in the custody of the Department of Corrections, and if such inmate fails to return to the assigned center, he is guilty of felony escape. 398 S.E.2d 160, 161-62 (W. Va. 1990).

To decide whether a given offense proscribes generic conduct with the potential for serious physical injury to another, we need to look at the fact of conviction and the statutory definition of the offense, and not to the underlying facts. See Hairston , 71 F.3d at 117. Upon reviewing the statutory definition of felony escape under W. Va. Code § 62-8-1, we conclude the offense of felony escape under that statute involves conduct that presents a serious potential risk of physical

4

injury to another, and thus constitutes a "violent felony" for purposes of the ACCA. Key does not argue in his brief that the statutory definition does not set out conduct presenting a serious risk of physical injury. Rather, he asks this court to consider the particular facts of his offense in considering whether his prior felony escape conviction constituted a "violent felony." Again, our holding in Hairston precludes such consideration.

Accordingly, we affirm Key's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and oral argument would not aid the decisional process.

AFFIRMED

5