### UNITED STATES

v.

### George SACKO.

### No. C.R. 97–36T.

United States District Court,
D. Rhode Island.

June 30, 2000.

James H. Leavey, Edwin J. Gale, Asst. U.S. Attorney's Office, Providence, RI, for Plaintiff.

Edward C. Roy, Jr., Roy & Cook, Providence, RI, for Defendant.

### Memorandum and Order
TORRES, Chief Judge.

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Findings of Fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88

Conclusions of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

    I.   Risk of Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

    A.   Seriousness ................................................... 90
    B.   Likelihood of Injury .......................................... 90
  II.  Assessment of Risk............................................ 90
    A.   Sources of Risk ............................................... 90
    B.   Quantifying the Risk ......................................... 91

Conclusion ....................................................... 91

This case has been remanded by the Court of Appeals so that this Court may "take evidence" and make findings "on the issue whether the crime of sexual penetration of a fourteen year-old by someone over the age of eighteen involves conduct presenting a serious potential risk of physical injury to the former." *United States v. Sacko*, 178 F.3d 1, 6 (1st Cir.1999). If so, that crime would be classified as a "violent felony" that triggers the sentencing enhancement provisions of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).

After considering the testimony and exhibits presented at an evidentiary hearing, I answer that question in the affirmative.

### Procedural History

On July 8, 1997, Sacko pled guilty to a two-count indictment charging possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of an unregistered silencer by a convicted felon, in violation of 26 U.S.C. § 5861(d). The government sought a sentencing enhancement under ACCA, which applies to persons with "three previous convictions ... for a violent felony," 18 U.S.C. § 924(e)(1), and defines "violent felony" to include:

> any crime punishable by imprisonment for a term exceeding one year ... that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious poten-*

> *tial risk of physical injury to another* ....

*Id.* § 924(e)(2)(B)(ii)(emphasis added).

Prior to the instant conviction, Sacko had been convicted of assault with a dangerous weapon; assault with intent to murder; and third degree sexual assault,[1] which encompasses what commonly is referred to as statutory rape.

Rhode Island's "third degree sexual assault" statute provides that:

> A "person" is guilty of third degree sexual assault if he or she is over the age of eighteen (18) years and engaged in sexual penetration with another person over the age of fourteen (14) years and under the age of consent, sixteen (16) years of age.[2]

R.I. Gen. Laws § 11–37–6.

Over Sacko's objection, this Court treated the third-degree sexual assault as a "violent felony" and sentenced Sacko as an armed career criminal pursuant to 18 U.S.C. § 924. In reaching that conclusion, the Court relied, in part, on the undisputed account of the offense contained in Sacko's Presentence Report ("PSR"). The PSR stated that Sacko met the victim on the street; induced her to accompany him to his residence; directed her to take her clothes off; and then had sexual intercourse with her. Three other men, then, entered the room, causing the victim to flee, and she reported the incident to police.

---

1. Although Sacko's conviction was for "carnal knowledge of a girl under the age of consent," Sacko and the government agree that this offense is covered by what, now, is denominated as "third degree sexual assault" under R.I. Gen. Laws § 11–37–6.

2. Under Rhode Island law a person who has passed his or her fourteenth birthday is "over the age of 14." *Cf. State v. Girouard*, 561 A.2d 882 (R.I.1989).

On appeal, the First Circuit noted that, in determining whether a predicate offense is a "violent felony," the sentencing court "should employ a 'formal categorical approach,' and generally 'look only to the fact of conviction and the statutory definition of the prior offense.'" *Sacko*, 178 F.3d at 3. The Court did recognize that "[a] sentencing court may go beyond the fact of conviction in those cases where the statute encompasses both violent felonies (e.g., generic burglary) and non-violent felonies (e.g., burglary of a vehicle rather than of a building)". *Id.* However, it stated that, even in such cases, the sentencing court may not go beyond the "indictment or information and jury instructions in order to discern which type of crime the offender was convicted of perpetrating." *Id.* Accordingly, the First Circuit held that this Court erred in considering the description of the prior offense contained in the PSR even though that account was undisputed. *Id.* at 5.

In remanding, the First Circuit noted that it previously had held the statutory rape of a 13–year–old girl by a 39–year–old man to be a "violent crime" under ACCA, because of "(1) the age of the girl; (2) the large chronological gap between the victim and the defendant; and (3) the medical literature regarding the possible physical injuries to the girl as a result of sexual intercourse with the defendant." *Id.* (citing *United States v. Meader*, 118 F.3d 876 (1st Cir.1997)). However, the Court stated that it was unable to say, *a priori*, whether or not "sex is [ ] physically dangerous for a 14 year old girl" because it had no "studies or medical journals to ground such a holding." *Id.* at 6.

The First Circuit also noted differences of opinion in other circuits as to whether the inquiry is limited to the risk of immediate physical injury from the act of intercourse, itself, or whether it extends to heightened risks of abnormal pregnancy and sexually-transmitted diseases. *Id.* The First Circuit took no position on this issue, but stated that if this Court does not find that the risks of physical injury during penetration are sufficient to meet the "serious potential risk of physical injury" standard, it should address the risks of pregnancy and contracting sexually-transmitted diseases as well. *Id.*

### Findings of Fact

After carefully considering the record previously compiled; the testimony of Dr. Carole Jenny, a pediatrician and professor of pediatrics at Brown University Medical School; the written opinion of Dr. Andrea M. Vandeven, the acting medical director of the Child Protection Team at Children's Hospital in Boston; the medical literature and other exhibits presented by the parties; and the stipulations and arguments of counsel; I hereby find the facts relevant to the remand order to be as follows.

At the time of his conviction for third degree sexual assault, Sacko was 22 years old and the victim was 14.

Based on the Tanner system for measuring physical development, a female passes through five stages in progressing from a pre-pubertal child to a fully-developed adult woman. The stages are marked by changes in breast and genital development.

A girl at stage 1 or 2 almost certainly will sustain physical damage or injury upon having sexual intercourse with an adult male. Such injuries would be classified as serious and would include tearing of tissue and damage to the vagina, the hymen and the introitus. A girl who has reached stage 3 may or may not experience physical injury from the act of intercourse, and most girls who have reached stage 4 can engage in sexual intercourse without tissue damage.

Thirty-three percent of adolescent girls do not reach Tanner stage 4 until sometime after attaining the age of 14. Twelve percent do not reach stage 4 until after attaining the age of 15.

In addition to the risk of immediate tissue damage, adolescent girls also are at a greater risk of contracting sexually

transmitted diseases (STD's) because even into the late adolescent years, the cells lining the cervix are not as tough as those found in a fully-developed mature woman, and they are more metabolically active. One such disease is chlamydia trachomatis, a devastating variety of STD that can lead to tissue damage and sterility. Susceptibility to genital tract infections also is heightened by the fact that the mucus secretions produced by an adolescent girl are less than those produced by a mature woman. Finally, since the blood vessels in an adolescent's cervix are much closer to the surface and therefore more easily traumatized, adolescent girls are more vulnerable to being infected by the AIDS virus.

Some of these diseases not only are more damaging to an adolescent girl; but, also, are more likely to recur in adolescents because adolescents are less able to develop an immunity to such infections.

In addition to these immediate and short-term risks, intercourse also subjects adolescent girls to increased long-term health risks that include a greater likelihood of contracting genital cancer and/or experiencing complications in pregnancy.

These facts support the opinion expressed by Dr. Jenny that sexual penetration of a 14–year old female by a male over the age of 18 "involves conduct presenting a serious potential risk of physical injury to the female." That opinion was not directly controverted by Dr. Vandeven, Sacko's expert. Dr. Vandeven merely stated that: "Given the following facts: that (1) a fourteen-year-old female had sexual intercourse with a twenty-year-old man, that (2) she did not become pregnant, and that (3) she did not contract a sexually transmitted disease, I can state that, given the physical maturity and genital anatomy of most African–American fourteen-year-olds, she would most likely not have sustained physical harm or injury as a direct result of the sexual intercourse." (Letter from Andrea M. Vandeven, M.D., Jan. 20, 2000.)

Dr. Vandeven's opinion is less persuasive with respect to the issue presented for two reasons. First, it rests on several factual assumptions that are both unsupported by the record and specific to this case. There is no evidence that the victim of the statutory rape was African–American, did not become pregnant and/or did not contract a sexually transmitted disease. Even if such evidence had been presented, it could not be considered by this Court because of the First Circuit's admonition that, under the "categorical approach," one may not look beyond the fact of conviction, the statutory definition of the offense, the indictment and the jury instructions. *Sacko,* 178 F.3d at 3. The question is not whether physical injury actually resulted in this case. Rather, it is whether the crime of third degree sexual assault (i.e. carnal knowledge) for which Sacko was convicted categorically presents a serious potential risk of physical injury.

In addition, Dr. Vandeven refers only to injuries that are "a direct result" of the sexual intercourse. To the extent that this choice of words suggests that Dr. Vandeven's opinion is limited to injuries sustained at the time of intercourse, it falls short of the mark. For reasons hereinafter stated, this Court concludes that the serious potential risk of physical injury referred to in § 924(e)(2)(B)(ii) also includes injuries that develop or manifest themselves in the future.

### Conclusions of Law

In order to determine, categorically, whether sexual penetration of a fourteen-year-old girl by a man over the age of eighteen involves conduct presenting a "serious potential risk of physical injury" to the girl, two questions that must be addressed are: (1) whether the previously mentioned risks are "serious?" and (2) whether the threatened "physical injury" must be one that immediately results from the sexual penetration or whether it includes injuries that are attributable to the penetration but that do not develop or manifest themselves until some later time?

### I. *Risk of Injury*

In assessing the degree of risk, one must consider both the magnitude of the potential injury and the likelihood that it will occur.

### A. *Seriousness*

As already noted, § 924(e)(2)(B) defines "violent felony" to include a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." The statute is somewhat ambiguous because it is not clear whether the word "serious" modifies only "potential risks;" or, whether it also modifies "physical injury." While a grammarian might argue that only the "potential risk" of physical injury must be serious, both logic and the text of Section 924(e)(2)(B) suggest that the "physical injury" must be serious, as well.

It is unlikely that Congress intended to classify a crime that presents a risk of only minor injury as a violent felony simply because there may be a significant possibility that such an injury may occur. On the contrary, the fact that the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" follows references to burglary, arson, extortion, and crimes involving the use of explosives strongly suggests that Congress intended that the offenses covered by that phrase involve similar risks of "serious physical injury." *See United States v. Key*, 145 F.3d 1327, 1998 WL 196603, at \*2 (4th Cir. Apr.22, 1998)(unpublished); *United States v. Hairston*, 71 F.3d 115, 117 (4th Cir.1995).

■ Accordingly, I conclude that in order for a felony to be classified as "violent," within the meaning of § 924(e)(2)(B), the potential injury must be a serious one.

### B. *Likelihood of Injury*

■ The probability of injury need not exceed fifty percent in order for the risk to be considered "serious." If that had been Congress's intent, Congress, presumably, would have described the threatened injury as "likely" or "probable" rather than as a "serious potential risk."

■ A "serious" potential risk exists if the likelihood that the injury will occur is more than trifling or insignificant. *See* Webster's Ninth Collegiate Dictionary 1175 (1987). While there is no "bright line" test, the degree of probability required depends, in part, on the magnitude of the anticipated harm. Put another way, these two variables are inversely proportional to one another. Thus, as the severity of the potential injury increases, the probability of occurrence required to establish a given level of risk diminishes. Conversely, as the severity of injury decreases, the probability of occurrence required to establish the same level of risk increases.

### II. *Assessment of Risk*

### A. *Sources of Risk*

In the case of "statutory rape," there are several ways in which physical injury may be caused. First, tissue damage may immediately result from the physical penetration. Second, as already noted, penetration, in the form of sexual intercourse, may make the victim susceptible, in the future, to various diseases or other dangerous conditions. In either case, the risk inheres in activity that is an element of the offense; namely, the act of penetration.

However, "statutory rape" presents an additional risk of physical injury because, if the victim resists what may have begun as a "consensual" act, the perpetrator may resort to violence. That risk is greatly increased when the victim is an immature 14–year–old who is more likely to balk during the course of a sexual encounter with which she has had little or no previous experience. Such a risk is inherent in the crime and is every bit as real as the risk that the victim will sustain tissue damage or contract a disease.

 It is well-established that a felony may involve conduct that presents a "serious potential risk of physical injury" even though force or injury are not elements of the offense. *See, e.g., United States v. DeJesus,* 984 F.2d 21, 24 (1st Cir.1993)(larceny from a person is a "violent felony" because "a sufficiently serious potential for confrontation and physical injury invariably exists."); *United States v. Payne,* 966 F.2d 4, 8 (1st Cir.1992)(attempted breaking and entering is a violent felony because a "risk of injury arises ... from the possibility that some innocent party may appear on the scene while the break-in is occurring."). Accordingly, "statutory rape" could be considered a "violent" felony on this ground, too. However, the risk of violence will not be considered in the instant case because it is beyond the scope of the remand order and because it is unclear whether the First Circuit, in *Sacko,* has indicated that it would view this as a violation of the "formal categorical approach."

## B. *Quantifying the Risk*

 As already noted, there is a thirty-three percent probability that sexual penetration will inflict immediate tissue damage on a 14–year old girl and that such damage can be serious. In addition, an adolescent girl is at a greater risk of contracting debilitating or fatal diseases such as chlamydia, AIDS, and cervical cancer from sexual intercourse.

Given the magnitude of the immediate tissue injury and the likelihood that it will occur, I conclude that the unadorned crime of third degree sexual assault involving penetration of a 14 year-old-girl by a man over the age of 18 "presents a serious potential risk of physical injury" to the girl.

 I further conclude that the consequences of future diseases attributable to penetration in the form of sexual intercourse constitute "physical injur[ies]" within the meaning of § 924(e)(2)(B) for which the perpetrator is accountable. *See Unit-*

*ed States v. Marler,* 756 F.2d 206, 216 (1st Cir.1985)("A fundamental principal of criminal law is that a person is held responsible for all consequences proximately caused by his criminal conduct. Thus, where events are foreseeable and naturally result from one's criminal conduct, the claim of legal causation is considered unbroken and the perpetrator is held criminally responsible for the resulting harm."). Finally, I conclude that especially in the cases of chlamydia, AIDS and cervical cancer, the consequences are so severe that the risk of their occurrence presents an additional "serious potential risk of physical injury" to the victim.

### Conclusion

For all of the foregoing reasons, this Court reiterates its determination that Sacko's sexual penetration of a 14–year-old girl in violation of R.I. Gen. Laws 11–37–6, was a "violent felony" under ACCA and that Sacko properly was sentenced as an "armed career criminal."

The clerk, hereby, is ordered to forward this Memorandum and Order to the Court of Appeals, forthwith.

IT IS SO ORDERED.