# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1931
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Larry Jack Nation, | * |
| | * |
| Appellant. | * |

_____

No. 00-1941

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Larry Jack Nation, | * |
| | * |
| Appellee. | * |

_____

Submitted:  December 12, 2000

Filed:  March 16, 2001
_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, and HANSEN,
       Circuit Judges.

_____

WOLLMAN, Chief Judge.

Larry Jack Nation appeals from his conviction in district court for being a felon in possession of a firearm. The United States cross-appeals, contending that the district court erred in sentencing Nation. We affirm the conviction, but vacate the sentence and remand for further proceedings.

## I.

During the course of a search otherwise unrelated to this case, officers of the Cleburne County, Arkansas, sheriff's department performed a consensual search of a home occupied by Nation and owned by James Wright. During the search, officers detected the strong odor of ether, a substance commonly utilized in the production of methamphetamine. When questioned about the odor, Wright informed officers that he had been using ether to clean a carburetor in a small storage shed on the property. Wright directed the officers to the shed, which contained significant quantities of starter fluid (ether), numerous new and used coffee filters, plastic milk jugs, glassware containing a liquid and a powdery substance, and a small tank with a "purplish-green" valve. Recognizing the possible components of a methamphetamine operation, officers requested permission to search the shed. Wright denied the request, after which the officers applied for and received a warrant to search the entire premises. During a search of the house the following morning, officers discovered a firearm in Nation's bedroom. Nation was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and sentenced by the district court to 65 months of imprisonment and three years of supervised release.

Nation raises three claims on appeal. He argues (1) that there was no probable cause to support the issuance of the warrant; (2) that the government presented improper rebuttal evidence at trial; and (3) that there is insufficient evidence to support his conviction. The United States cross-appeals, contending that the district court erred in sentencing Nation by failing to treat his prior conviction for escape as a crime of violence.

## II.

Nation first contends that the search warrant was not based on probable cause and therefore that the weapon discovered at his residence should not have been admitted into evidence. "We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Clayton, 210 F.3d 841, 845 (8th Cir. 2000) (citation omitted). Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). We will uphold a judicial determination of probable cause if we believe that there was a substantial basis for concluding that a search would uncover evidence of wrongdoing. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (citation omitted).

Nation argues that the warrant lacked probable cause because the items in the shed were "non-contraband" and "innocuous." He also notes that officers did not report seeing ephedrine or drain cleaner, other components often used in methamphetamine production, nor did they observe the presence of a heat source necessary to produce the drug. Further, although Nation acknowledges that the odor of an illegal substance can provide police with probable cause, United States v. Gipp, 147 F.3d 680, 685 (8th Cir. 1998), he argues that the odor of ether, a non-controlled substance, cannot constitute probable cause.

-3-

In determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning. United States v. Morales, 923 F.2d 621, 623-24 (8th Cir. 1991). Taken together, we believe the combination of items in the shed created a fair probability that police would discover further evidence of illegal drug activity on the premises. It is beyond dispute that the individual items located in the shed could be used for legal purposes. As the Supreme Court has noted, however, "innocent behavior frequently will provide the basis for a showing of probable cause." Gates, 462 U.S. at 243 n.13. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Id. As the sheriff indicated in his application for the warrant, ether, coffee filters, plastic and glass containers, and pressurized containers with purplish-green residue on the valve are common to methamphetamine operations. In our view, the storage of these items together under the specific circumstances of this case raised sufficient suspicion of criminal activity to support a finding of probable cause.

Furthermore, it is irrelevant that police did not report the presence of all of the items required for methamphetamine production on the premises. Probable cause requires only that police have a substantial basis for believing that a search would uncover evidence of criminal activity, Horn, 187 F.3d at 785; it does not require that police observe every component or ingredient involved in an illegal drug operation before applying for a warrant. Cf. Morales, 923 F.2d at 624 (police are not required to "have enough evidence to justify a conviction" before making a warrantless arrest). Additionally, because the numerous items observed in the shed during the consensual search supported a finding of probable cause, we need not reach the issue of whether the odor of a legal substance alone, in this case ether, could have supported issuance of the warrant.

Second, Nation contends that the district court abused its discretion by allowing the government to present improper rebuttal testimony. Specifically, Nation challenges the testimony of one of the arresting officers that there was only one bed in the house. Nation contends this testimony should have been presented during the government's case-in-chief and that it should have been excluded under Federal Rule of Evidence 403. We disagree.

"The function of rebuttal is to explain, repel, counteract, or disprove evidence of the adverse party." United States v. Azure, 845 F.2d 1503, 1508 (8th Cir. 1988) (citation omitted). Here, Nation presented testimony by James Wright that could have led the jury to believe that Nation did not occupy the bedroom where the gun was located and therefore was not aware of the existence of the weapon in the house. During cross-examination, Wright testified that there were beds in two rooms of the house at the time of the search. Additionally, the district court permitted Nation to introduce a videotape made eight months after his arrest that showed two beds in the house. Because the officer's testimony that there was only one bed in the house was offered to counter this evidence, we conclude that the district court did not abuse its discretion in allowing the testimony as rebuttal. United States v. Beasley, 102 F.3d 1440, 1445 (8th Cir. 1996) (standard of review). We also conclude that the district court did not abuse its discretion by refusing to exclude the evidence under Rule 403.

Third, Nation argues that there is insufficient evidence to support his conviction. Although the government must prove every element of the offense, the evidence "need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. Lee, 232 F.3d 653, 655 (8th Cir. 2000). We view the evidence in the light most favorable to the verdict, accepting as established all reasonable inferences the evidence tends to prove. Id.

The only issue before the jury in this case was whether Nation knowingly possessed the firearm. Viewed in the light most favorable to the verdict, the evidence introduced at trial proved that police located the firearm in an open armoire in Nation's bedroom. The gun itself was in an open case, and numerous letters addressed to Nation were located in the room. This evidence, in addition to testimony suggesting that Nation initially asked Wright to obtain the gun, is sufficient to establish either actual or constructive possession of the firearm. To the extent that Nation urges us to reassess the credibility of witnesses at trial, we emphasize that credibility determinations are the province of the jury. United States v. Ireland, 62 F.3d 227, 230 (8th Cir. 1995).

## III.

On cross-appeal, the United States argues that the district court incorrectly calculated Nation's base offense level. The court sentenced Nation pursuant to U.S.S.G. § 2K1.3, which provides for a base level of 20 "if the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense," U.S.S.G. § 2K1.3(a)(2), and a base offense level of 24 "if the defendant has had at least two prior felony convictions of either a crime of violence or a controlled substance offense," U.S.S.G. § 2K1.3(a)(1). In 1995, Nation was convicted in Arkansas state court of second degree escape. After examining the circumstances of the escape and determining that the only individual at risk was Nation himself, the district court concluded that it was not a crime of violence. Accordingly, the court assigned Nation a base offense level of 20, resulting in a sentencing range of 63 to 78 months' imprisonment.[1] The United States contends that under the guidelines escape is, categorically, a crime of violence and that Nation should have been assigned a base offense level of 24.

---

[1]Nation has a criminal history category of V and a prior conviction for burglary of a commercial building, a crime of violence pursuant to United States v. Hascall, 76 F.3d 902 (8th Cir. 1996).

We review the district court's interpretation and construction of the sentencing guidelines de novo. United States v. Snoddy, 139 F.3d 1224, 1227 (8th Cir. 1998). The guidelines define a "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

It is undisputed that Nation's conviction for escape was punishable by a term of imprisonment in excess of one year and that it does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1). The only question here is whether the offense "involves conduct that presents a serious potential risk of physical injury to another." In addressing this issue, the district court determined that the guidelines authorized an examination of the particular facts of Nation's escape from the county jail. Although the court acknowledged that "generally, escape has a potential of harm to others," it reasoned that the term "conduct" in U.S.S.G. § 4B1.2(a)(2) referred to the underlying facts of a particular offense. Accordingly, the court examined the specific circumstances of Nation's conviction, determined that the escape posed no serious risk of physical injury to another, and concluded that the offense was not a crime of violence.

We respectfully disagree with the district court's analysis and conclusion. Although we acknowledge that the term "conduct" in § 4B1.2(a)(2) could suggest an

examination of the underlying facts of a particular offense, we note that the first application note to § 4B1.2 explains that:

> [o]ther offenses are included as "crimes of violence" if . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2, comment. (n.1). This interpretation is controlling. Stinson v. United States, 508 U.S. 36, 42 (1993). Thus, the guidelines direct us to examine the nature of the expressly charged conduct, rather than the particulars of the defendant's behavior, to determine whether a particular offense is a crime of violence. In a similar context, we have described this method as the "categorical approach" to defining violent criminal conduct, United States v. Stuckey, 220 F.3d 976, 985 (8th Cir. 2000) (citation omitted), and have acknowledged that such an approach covers a broad range of activity. Id.

We must therefore determine whether the nature of the expressly charged conduct in this case presented a serious potential risk of physical injury to another. The record indicates that the criminal information charged that Nation "did unlawfully, being a convicted felon, on or about the 8th day of April, 1995, escape from the Cross County Jail, a correctional facility." The issue before us, then, is whether the crime of escape, by its nature, involves a serious potential risk of physical injury to another. We conclude that it does, and accordingly we hold that escape is categorically a crime of violence as defined in U.S.S.G. § 4B1.2.

We believe that every escape, even a so-called "walkaway" escape, involves a potential risk of injury to others. As the Tenth Circuit observed, an escapee is likely to possess a "variety of super-charged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow

-8-

escapees." United States v. Gosling, 39 F.3d 1140, 1142 (10th Cir. 1994). Every escape, therefore, "is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." Id. Even the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee. Given this reality, we have no difficulty in concluding that escape qualifies as a crime of violence pursuant to U.S.S.G. § 4B1.2. We note that the Fourth, Fifth, Sixth, and Tenth Circuits have reached similar conclusions. United States v. Hairston, 71 F.3d 115, 118 (4th Cir. 1995) (escape is a crime of violence for the purposes of the Armed Career Criminal Act); United States v. Ruiz, 180 F.3d 675, 676 (5th Cir. 1999) (walkaway escape is a crime of violence pursuant to U.S.S.G. § 4B1.2); United States v. Harris, 165 F.3d 1062, 1068 (6th Cir. 1999) (guidelines prescribe a categorical approach in defining a crime of violence for purposes of career offender status); Gosling, 39 F.3d at 1142-1143 (escape is a crime of violence for purposes of U.S.S.G. § 4B1.2).

We affirm the conviction, vacate the sentence, and remand for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.