Vacated by Supreme Court, January 21, 2009

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

LINWOOD CHARLES MATHIAS,
　　　　　　*Defendant-Appellant.*

No. 06-4109

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, District Judge.
(CR-04-41-BO)

Argued: January 31, 2007

Decided: April 13, 2007

Before WILKINSON, NIEMEYER, and SHEDD, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Shedd joined.

---

### COUNSEL

**ARGUED:** Rudolph Alexander Ashton, III, MCCOTTER, ASHTON & SMITH, P.A., New Bern, North Carolina, for Appellant. John Stuart Bruce, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Christine Witcover Dean, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

This case presents the question of whether escape qualifies as a "violent felony" under the Armed Career Criminal Act ("ACCA") when the escape did not involve force or violence. In connection with the armed robbery of National Cash Advance, a payday lending service, Linwood Mathias was indicted as a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (2000 & Supp. 2004). He pled guilty. During sentencing, the district court held that Mathias' three prior convictions — two for burglary and one for felony escape — were "violent felon[ies]" under the ACCA. The court thus designated Mathias an armed career criminal and sentenced him to the statutory minimum: fifteen years imprisonment.

Mathias appeals this sentence. He contends that he should not have been classified as an armed career criminal because the circumstances of his case involved nothing more than a walkaway from a work release program and because his escape conviction was under a Virginia law titled "Escape without force or violence." We disagree. Because every escape "involves conduct that presents a serious potential risk of physical injury to another," *see* 18 U.S.C. § 924(e)(1)(B)(ii) (2000), Mathias' escape conviction is a "violent felony" under the ACCA. We therefore affirm Mathias' sentence.

I.

Linwood Mathias and codefendants Antonio Cooper and Terry Deberry executed an armed robbery of National Cash Advance, a payday lender in Elizabeth City, North Carolina.[1] On August 23,

---

[1]Codefendant Cooper pled guilty to possession of a firearm by a convicted felon and aiding and abetting the same conduct. He was sentenced to 120 months' imprisonment. Cooper appealed. This court affirmed, finding Cooper's sentence to be reasonable. *United States v. Cooper*, 2006 WL 3827561, at *1 (4th Cir. Dec. 28, 2006). Codefendant Deberry also pled guilty to possession of a firearm by a convicted felon and aiding and abetting; he was sentenced to 120 months' imprisonment. On appeal, this court affirmed Deberry's conviction and sentence. *United States v. Deberry*, 173 Fed. Appx. 306, 307 (4th Cir. Apr. 4, 2006).

2004, defendants met at Cooper's residence. Deberry then drove Mathias and Cooper to National Cash Advance in the 1994 Ford Explorer he had stolen for the occasion.

Mathias and Cooper, both armed, entered the lending business. National Cash Advance manager Joann Godfrey was in the store along with her eighteen-year-old daughter and three-year-old son. Cooper demanded money and Mathias and Cooper brandished loaded firearms — Mathias a Glock 9 millimeter semi-automatic pistol and Cooper a Colt Cobra .38 Special caliber revolver. Cooper took $300 from the money drawer and Mathias escorted Godfrey and her children to a back room. Godfrey was told to remain in the back room for at least fifteen minutes and Mathias and Cooper joined Deberry in the get-away vehicle.

Law enforcement officers, having been alerted by a National Cash Advance customer, attempted to stop the Ford Explorer minutes after it left the lender's parking lot. Deberry refused to pull over. He instead exited the still-moving vehicle and fled on foot. Cooper began driving with Mathias in the vehicle. He led the officers on an eleven mile high-speed chase that ended when Cooper crashed the Ford Explorer into the back of a police car. The Glock 9 millimeter semi-automatic pistol and Colt Cobra .38 Special caliber revolver were found near the passenger seat of the stolen Explorer.

At the time of the armed robbery, Mathias was a convicted felon. On November 10, 2004, he was indicted as a felon-in-possession and of aiding and abetting the same conduct in violation of 18 U.S.C. §§ 922(g)(1), 924, and 2. Mathias pled guilty to the felon-in-possession and aiding and abetting charges on July 12, 2005.

The Presentence Investigation Report catalogued Mathias' extensive criminal history. Most pertinently, the PSR identified three prior "violent felony" convictions: two for burglary and one for felony escape. With respect to the felony escape conviction, the PSR noted that Defendant Mathias had walked away from a work release program in violation of Virginia Code § 18.2-479(B). Mathias objected to the violent felony classification of his prior Virginia escape conviction and argued that the conviction was a nonviolent one under Virginia law. The district court disagreed. The court held that Mathias'

escape conviction was a violent felony for purposes of the ACCA regardless of its classification under state law. The court then adopted without modification the PSR, designated Mathias an armed career criminal, and imposed the mandatory minimum sentence of fifteen years imprisonment required by the ACCA.

Mathias now appeals.

## II.

The Armed Career Criminal Act imposes heightened sentences on individuals who by repeated conduct have demonstrated an unwillingness to abide by basic social norms as expressed in state and federal criminal codes. Under the statute, any person who violates the felon-in-possession statute, 18 U.S.C. § 922(g), and has three previous "violent felony" convictions must be designated an armed career criminal. 18 U.S.C. § 924(e)(1). This designation carries a mandatory sentence of not less than fifteen years. *Id.* The ACCA, 18 U.S.C. § 924(e)(2)(B), defines the term "violent felony" as any crime punishable by imprisonment for more than one year that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Mathias concedes that his two prior burglary convictions are "violent felon[ies]" under the Armed Career Criminal Act and qualifying predicate offenses for an armed career criminal designation. He contends, however, that his felony escape conviction does not constitute a "violent felony," and that the district court's imposition of the ACCA's statutory minimum fifteen-year sentence was unlawful. We review *de novo* the district court's conclusion that Mathias' escape conviction qualifies as a "violent felony." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006).

## A.

Mathias first argues that his escape conviction does not constitute a "violent felony" under the ACCA because the particular circum-

stances of his escape — he walked away from a work release program — presented no risk of serious injury. He urges us to "loo[k] beyond the definition of the charging document and statute" and parse the underlying factual basis of his conviction.

This argument ignores settled law: in this circuit, as in others, the question of whether an escape is a "violent felony" is a categorical one. *See, e.g.*, *United States v. Wardrick*, 350 F.3d 446, 454 (4th Cir. 2003); *United States v. Hairston*, 71 F.3d 115, 117 (4th Cir. 1995); *see also Taylor v. United States*, 495 U.S. 575, 602 (1990). Under the categorical approach, we consider the nature of the offense as defined by statute, not the conduct and circumstances underlying a specific conviction. *Wardrick*, 350 F.3d at 454; *Hairston*, 71 F.3d at 117; *see also Taylor*, 495 U.S. at 602.

The question, therefore, is whether escape as codified in Virginia Code § 18.2-479(B) is a "violent felony." *See United States v. Kirksey*, 138 F.3d 120, 124 (4th Cir. 1998); *Hairston*, 71 F.3d at 117. Because escape under this provision does not itself involve "the use, attempted use, or threatened use of physical force" as required by 18 U.S.C. § 924(e)(2)(B)(i), the issue is whether Virginia Code § 18.2-479(B) "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii). The Virginia escape statute, Va. Code Ann. § 18.2-479(B) (West Supp. 2006), provides:

> Any person, lawfully confined in jail or lawfully in the custody of any court, officer of the court, or of any law-enforcement officer on a charge or conviction of a felony, who escapes, other than by force or violence or by setting fire to the jail, is guilty of a Class 6 felony.

The plain text of the Virginia statute punishes those who unlawfully and feloniously escape from confinement. We are, therefore, hard pressed to find that such an escape does not "involv[e] conduct that presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(1)(B)(ii).

This court decided as much in *United States v. Hairston*, 71 F.3d 115 (4th Cir. 1995), when we held that felony escape from custody

in North Carolina, *see* N.C. Gen. Stat. § 148-45(b)(1) (1987), constitutes a crime of violence under the ACCA. In that case, defendant jumped over a fence in a minimum security prison. He argued that felony escape from custody in North Carolina did not present a serious potential risk of physical injury because, in North Carolina, most felony escapes were undertaken by stealth. *Hairston*, 71 F.3d at 118. This court disagreed. We explained that any escape, even an escape by stealth, "inherently presents the serious potential risk of physical injury to another," and concluded that an escape offense, however effected, is a "violent felony" under the categorical approach of 18 U.S.C. § 924(e)(1)(B)(ii). *Id.*; *see also Wardrick*, 350 F.3d at 455.

The same result obtains here. Defendant Mathias unlawfully and feloniously broke the bonds of custody when he walked away from the work release program. In this, he violated Virginia Code § 18.2-479(B), and committed a "violent felony" under the categorical approach, this court's decision in *Hairston*, and the second prong of 18 U.S.C. § 924(e)(1)(B).

Our conclusion finds support in the decisions of our sister circuits. Every court of appeals to consider the question has concluded that felony escape convictions categorically constitute violent felonies within the ambit of § 924(e). *See, e.g.*, *United States v. Jackson*, 301 F.3d 59, 63 (2d Cir. 2002) (holding that a "walkaway" escape is a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii)); *United States v. Abernathy*, 277 F.3d 1048, 1051 (8th Cir. 2002) (same); *United States v. Springfield*, 196 F.3d 1180, 1185 (10th Cir. 1999) (same); *United States v. Franklin*, 302 F.3d 722, 724-25 (7th Cir. 2002) (holding that escape is a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii) because it presents a "serious potential risk of physical injury"); *United States v. Houston*, 187 F.3d 593, 594-95 (6th Cir. 1999) (same).[2]

---

[2]In addition, the vast majority of our sister circuits (and this court) have concluded that, because escape "involves conduct that presents a serious potential risk of physical injury to another," it is a "crime of violence" as defined by the career offender sentencing guideline, USSG § 4B1.2(a). *Compare* USSG § 4B1.2(a) *to* 18 U.S.C. § 924(e)(2)(B)(ii). *See United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004) (failure to return to a halfway house is a crime of violence under USSG § 4B1.2); *United States v. Bryant*, 310 F.3d 550, 554 (7th Cir. 2002) (same);

B.

Mathias nonetheless contends that *Hairston* does not apply to this case and that his escape conviction cannot be a "violent felony" because Virginia Code § 18.2-479(B) defines escape as a "nonviolent" offense. He directs us to the Virginia statute's title, "Escape without force or violence or setting fire to jail," and argues that, unlike the North Carolina statute at issue in *Hairston*, Virginia Code § 18.2-479(B) "applies only to those who escape 'other than by force or violence.'" There are two problems with this approach.

First, the fact that Mathias' conviction is labeled "nonviolent" by state law is beside the point. The point is simply that Congress, in enacting the ACCA, spoke in terms of risk, not result. Under the Armed Career Criminal Act, "it is not necessary that the defendant's specific conduct actually resulted in physical injury to another." *United States v. Moudy*, 132 F.3d 618, 620 (10th Cir. 1998). To the contrary, we examine only whether the nature of the offense presents "a serious potential *risk* of physical injury to another." *Id.* (quoting 18 U.S.C. § 924(e)(1)(B)(ii)); *Franklin*, 302 F.3d at 724.

There can be no doubt that a serious potential risk of physical injury is part and parcel of Mathias' escape conviction. *See* 18 U.S.C. § 924(e)(1)(B)(ii). For escape is a volatile enterprise. At the outset, there is always a chance that an escape attempt will be interrupted — by a prison guard, work supervisor, or citizen bystander. *Hairston*, 71 F.3d at 118. Such an encounter leads to an "immediate and substantial

---

*United States v. Turner*, 285 F.3d 909, 915-16 (10th Cir. 2002) (same); *United States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002) (walkaway escape is a crime of violence under USSG § 4B1.2); *United States v. Gay*, 251 F.3d 950, 954-55 (11th Cir. 2001) (per curiam) (same); *United States v. Nation*, 243 F.3d 467, 472 (8th Cir. 2001) (same); *United States v. Ruiz*, 180 F.3d 675, 676-77 (5th Cir. 1999) (same); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999) (escape, by its nature, qualifies as a crime of violence under USSG § 4B1.2); *United States v. Dickerson*, 77 F.3d 774, 777 (4th Cir. 1996) (same). *But see United States v. Piccolo*, 441 F.3d 1084, 1089-90 (9th Cir. 2006) (walkaway escape is not a crime of violence under USSG § 4B1.2).

risk that the situation will escalate to one involving physical force." *Id.* (quoting *United States v. Aragon*, 983 F.2d 1306, 1313 (4th Cir. 1993)). Even a walkaway escape is "a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious *potential* to do so." *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994). And, as this court has noted, the events surrounding an escape are "super-charged with the potential that, in being played out, physical force will be exerted against some person or some property." *Aragon*, 983 F.2d at 1313.

Even if the escape itself could somehow sidestep any potential risk of injury, the circumstances of recapture necessarily encompass just such a risk. Individuals who find custody intolerable to the point of escape are unlikely to calmly succumb to recapture efforts. Indeed, the very fact of "escape invites pursuit; and the pursuit, confronta-tion." *Jackson*, 301 F.3d at 63. As a result, the risk of violence that begins upon escape is an ongoing one, *see United States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002); *United States v. Bailey*, 444 U.S. 394, 413 (1980), and hair-raising recovery efforts by law enforcement officers far from unusual, *see, e.g.*, *Tison v. Arizona*, 481 U.S. 137, 144-45 (1987) (noting use of lethal force, abduction, and murder to evade recapture); *Garza v. Henderson*, 779 F.2d 390, 397 (7th Cir. 1985) (noting gun battle prior to defendant's recapture).

Here, the Virginia Code defines a § 18.2-479(B) violation as escape "other than by force or violence . . . ." Even putting aside the fact that a risk of physical harm exists with every escape, the Virginia provision speaks only to what occurred at the time of flight — not to the additional risk presented at the time of recapture. Upon escape, a prisoner becomes a fugitive from justice and the risk of physical injury continues so long as the escapee remains at large. In sum, "[e]ven the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee." *United States v. Nation*, 243 F.3d 467, 472 (8th Cir. 2001). Since every escape, however executed, "involves conduct that pre-sents a serious potential *risk* of physical injury to another," *see* 18 U.S.C. § 924(e)(1)(B)(ii) (emphasis added), "[i]t is irrelevant . . . whether defendant was convicted under a state statute that defines escape as a nonviolent offense," *Springfield*, 196 F.3d at 1185.

Second, the fact that "violence" is not an element of Virginia Code § 18.2-479(B) is hardly dispositive. A statute need not proscribe "force" or "violence" in so many words for a conviction under its provisions to be deemed a violent one. And while Mathias is correct that the first clause of § 924(e)(2)(B) defines as violent felonies those which have "*as an element* the use, attempted use, or threatened use of physical force against the person of another," he altogether ignores the second clause of § 924(e)(2)(B). That provision makes no mention of "force" or "violence" — much less suggest that "force" or violence" is a required element. Rather, as we have noted above, the appropriate inquiry is risk: under § 924(e)(2)(B)(ii), violent felonies include those which "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another."

To adopt Mathias' approach and conclude that the second clause of § 924(e) only reaches conduct that is itself violent (and thus covered by the first clause of § 924(e)), would render the "otherwise" clause of § 924(e) superfluous. But it is "a classic canon of statutory construction that courts must 'give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous.'" *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005) (quoting *United States v. Ryan-Webster*, 353 F.3d 353, 366 (4th Cir. 2003)); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001) (same).

### III.

For the foregoing reasons, we conclude that Mathias' felony escape conviction under Virginia Code § 18.2-479(B) is a "violent felony" as defined by the ACCA. Mathias' sentence is affirmed.

*AFFIRMED*