LOKEN, Circuit Judge.
Jose Parks pleaded guilty to possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). The district court[1] sentenced him as a career offender to 151 months in prison, the bottom of the career offender advisory guidelines range. If Parks is not a career offender, the range would be 41 to 51 months. Parks appealed, arguing that his prior Missouri conviction for escape from confinement was not a crime of violence. We affirmed, applying our prior rulings that all escape offenses are, categorically, crimes of violence. United States v. Parks, 249 Fed.Appx. 484, 485 (8th Cir.2007). The Supreme Court then decided Chambers v. United States, - U.S. -, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), which held that failure to report or return to confinement is not a violent felony, and remanded this case to us for reconsideration in light of Chambers. Parks v. United States, — U.S. -, 129 S.Ct. 994, 173 L.Ed.2d 285 (2009).
Noting that “whether a walkaway escape is a violent felony under Chambers and Begay [v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008),]” is an open question, and that the Missouri statute at issue “may include failure to report or return offenses,” we remanded for further sentencing proceedings, instructing the district court “to analyze Parks’s prior escape conviction under [Mo.Rev.Stat.] § 575.210 in light of Chambers and Begay.” United States v. Parks, 561 F.3d 795, 798 (8th Cir.2009).[2] On remand, the district court determined that Chambers did not alter the court’s conclusion that Parks’s escape offense was a crime of violence and re-sentenced him to 151 months in prison. Parks appeals, arguing that walking away from a halfway house is not a crime of violence. Agreeing with the district court that Parks’s offense was not a mere walkaway, we affirm without deciding this recurring issue.
The career offender provisions increase an adult defendant’s offense level and criminal history category if he has two prior felony convictions for crimes of violence or controlled substance offenses. See U.S.S.G. § 4B1.1. Crime of violence is defined as an offense punishable by more than one year in prison that—
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
*913 U.S.S.G. § 4B1.2(a). In determining whether a prior conviction was for a crime of violence, we apply a categorical approach, looking to the elements of the offense as defined in the Missouri statute of conviction rather than to the facts underlying the defendant’s prior conviction. See James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). However, if the statute is overinclusive — in other words, when the statute “encompasses multiple generic crimes, and when some qualify as crimes of violence while others do not” — we apply a modified categorical approach that allows the sentencing court to look at the charging document, plea colloquy, and comparable judicial records to determine whether the prior offense was a crime of violence. United States v. Ross, 613 F.3d 805, 807 (8th Cir.2010), quoting Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010); see United States v. Furqueron, 605 F.3d 612, 614 (8th Cir.2010).
Parks was convicted in 1989 of violating Mo.Rev.Stat. § 575.210. Entitled escape or attempted escape from confinement, the statute at that time provided:
1. A person commits the crime of escape or attempted escape from confinement if, while being held in confinement after arrest for any crime, or while serving a sentence after conviction for any crime, he escapes or attempts to escape from confinement.
2. Escape or attempted escape from confinement is a class D felony except that it is:
(1) A class A felony if it is effected or attempted by means of a deadly weapon or dangerous instrument or by holding any person as hostage;
(2) A class C felony if the escape or attempted escape is facilitated by striking or beating any person.
Mo.Rev.Stat. § 575.210 (1989). The issue on appeal is whether Parks’s class D felony conviction for escape from confinement was a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2) because it “otherwise involves conduct that presents a serious potential risk of physical injury to another.”[3]
1. A problem in classifying escape offenses for these purposes is that criminal escape statutes vary significantly in structure. The ■ Illinois statute at issue in Chambers described different kinds of criminal escape behavior in discrete sub-parts, making it easy for the Court to “treat the statute for ACCA purposes as containing at least two separate crimes.” The Court distinguished failure to report offenses, which it concluded are not violent felonies, from “escape from custody” offenses. 129 S.Ct. at 691. But under the federal escape statute, 18 U.S.C. § 751(a), and broadly worded statutes in many States, failures to return are not separately listed but are nonetheless encompassed in the conduct prohibited. Reviewing § 751(a) convictions after Chambers, we concluded that the statute is over-inclusive for this reason and therefore must be analyzed under the modified categorical approach. See United States v. Pearson, 553 F.3d 1183, 1186 (8th Cir.2009), followed in United States v. Jackson, 594 F.3d 1027, 1029-30 n. 2 (8th Cir.2010).
By contrast, the Seventh Circuit has concluded that § 751(a) is not textually “divisible,” and therefore all violations áre, categorically, not crimes of violence. United States v. Hart, 578 F.3d 674, 680- *914 81 (7th Cir.2009). Though the Supreme Court has not addressed this issue and its opinions can be read to support both conclusions, we disagree with the Seventh Circuit. The Court said in Chambers that the question is whether “the behavior underlying” one type of violation “differs so significantly from the behavior underlying” another type of violation “that for ACCA purposes a sentencing court must treat the two as different crimes.” 129 S.Ct. at 690. This suggests that over-inclusiveness for career offender purposes may arise even if a criminal statute — which of course was not drafted with this issue in mind — is not textually divisible. Thus, like all other circuits to address the question,[4] we adhere to our decision in Pearson that § 751(a) — and similar broadly worded state escape statutes — must be analyzed for over-inclusiveness, as our prior remand instructed the district court to do in this case.
2. The Missouri escape statutes are not as broad as some of the statutes at issue in the cases cited in footnote 4. Rather, Missouri separately prohibits escape from a state mental hospital (Mo.Rev.Stat. § 575.195), escape from custody after arrest (§ 575.200), escape from confinement (§ 575.210), and failure to return (§ 575.220). “Confinement” is defined as being “held in a place of confinement pursuant to arrest or order of a court,” Mo. Rev.Stat. § 556.061(4); a person is not in confinement if he is on probation or parole or is “serving a sentence under a work-release program, and ... is not being held in a place of confinement,” § 556.061(4)(b). A “place of confinement” is defined as “any building or facility and the grounds thereof wherein a court is legally authorized to order that a person charged with or convicted of a crime be held.” Mo.Rev.Stat. § 556.061(21). The Missouri penal code does not define the term “escape,” but its ordinary meaning is broadly defined as “[t]he act or an instance of breaking free from confinement, restraint, or an obligation.” Black’s Law Dictionary 583 (8th ed. 2004). By its plain language, then, § 575.210 encompasses the spectrum of offenses between escape from a guarded, maximum security facility and leaving an unguarded facility without authority, such as walking away from a halfway house. See Ford, 560 F.3d at 424 (construing a similar Kentucky statute to include escapes from confinement and walkaway escapes).
Because a number of circuits have held or intimated that “walkaway” escapes are not crimes of violence, an open issue in this circuit, we directed the district court to consider this issue.[5] As the district court recognized, before reviewing the facts of *915 Parks’s particular offense using the modified categorical approach, we must analyze, generically, what types of § 575.210 class D felony convictions (if any) are crimes of violence. In conducting that analysis, we first determine the kinds of behavior that would make at least some escapes from confinement “conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a)(2). Parks argues that class D felony escape convictions for walking away from a halfway house — offenses he defines as “non-aggravated escapes from low-security facilities” — are not crimes of violence under Chambers and Begay.
Escape decisions prior to Chambers focused on the risk of physical injury presented at the time of the escape — the risk that one attempting to escape will resort to physical force if interrupted by a prison guard or police officer “is at least as great as that presented when a temporarily absent resident returns home and encounters a burglar,” United States v. Hairston, 71 F.3d 115, 118 (4th Cir.1995) (quotation omitted), cert. denied, 517 U.S. 1200, 116 5.Ct. 1699, 134 L.Ed.2d 798 (1996). The Court in Chambers did not reject this focus. But it concluded that failing to report or return is passive conduct that at the time poses no serious potential risk of physical injury to another. “The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody.” 129 S.Ct. at 691.[6]
Viewing the residual clause’s plain language and these prior decisions, we conclude that the critical distinction among § 575.210 class D felony offenses is between escape from a secured and guarded facility and escape from an unsecured facility. These are “meaningfully distinct and meaningfully distinguishable categories] of escape as a matter of federal law.” Ford, 560 F.3d at 424. We disagree with the dissent’s focus on the colloquial terms, “walkaway” and “half-way house,” rather than on the comparative risk of violence inherent in different types of escape behavior. At the critical time of an escape from confinement, the potential risk of physical injury to another turns not so much on the type of facility- — halfway house versus jail or prison — as on whether the facility is secured in some fashion and guarded by a person with custodial responsibility to keep offenders confined at the time of the escape. The enumerated crime of burglary can be accomplished without purposeful violence, but it is a crime of violence because the offender purposefully and aggressively creates a substantial risk of violent confrontation. See United States v. Hennecke, 590 F.3d 619, 622-23 (8th Cir.2010). Likewise, the inmate escaping from guarded confinement engages in purposeful, violent, and aggressive behavior that creates the same risk. Moreover, unlike a homeowner who may decline to confront a burglar, correctional facility guards have a duty to confront and challenge an inmate escaping from confinement.[7]
*916 Having defined the category of escapes from confinement that are crimes of violence, we use the modified categorical approach to determine whether Parks’s prior offense fell within that category. On remand, the parties submitted judicial records establishing that Parks was charged with a class C felony violation of § 575.210 but pleaded guilty to a class D violation. At the change of plea hearing, Parks admitted that the State could prove beyond a reasonable doubt that on&emdash;
June 11, 1989, approximately 4:35 p.m. ... the defendant Jose Parks escaped from St. Mary’s Honor Center by running past the front door officer and out the door at about the stated time as the door was opened for a routine intake of returning inmates.
Based on this evidence, which the district court properly considered in applying the modified categorical approach, see Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the court correctly concluded that Parks’s offense was a crime of violence. Judicial records showing that Parks ran past a guard and out a facility door that was open only to receive returning inmates establish that his conviction fell within the category of class D felony escape-from-confinement convictions that are crimes of violence as a matter of federal law. The presence of a front door guard prevented inmates from coming and going as they pleased. The fact that there was a regular time for the door to be opened for returning inmates reveals that the door was normally closed and locked. Parks therefore committed the generic crime of escape from a secured facility. Cf. United States v. Pratt, 568 F.3d 11, 22 (1st Cir.), cert. denied, - U.S. -, 130 S.Ct. 425, 175 L.Ed.2d 291 (2009); Ford, 560 F.3d at 424; U.S.S.G. § 2P1.1 cmt. n. 1 (“ ‘Non-secure custody’ means custody with no significant physical restraint.”). Therefore, we need not decide whether § 575.210 also includes a universe of true walkaway class D felony offenses that are not crimes of violence.
The judgment of the district court is affirmed.

. The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

. The Armed Career Criminal Act at issue in Chambers uses the term "violent felony.” 18 U.S.C. § 924(e)(2)(B). We construe "crime of violence” and "violent felony” as having the same meaning. United States v. Stymiest, 581 F.3d 759, 767 (8th Cir.2009), cert. denied, U.S. -, 130 S.Ct. 2364, 176 L.Ed.2d 573 (2010).

. We note that a class A or class C felony conviction for escape from confinement would be a crime of violence under § 4B1.2(a)(1). See Johnson, 130 S.Ct. at 1270-71. Only class D felony offenses do not involve the use of physical force and therefore must be analyzed, like the failure to return offense in Chambers, under the residual clause of § 4B 1.2(a)(2).

. See, e.g., United States v. Lee, 586 F.3d 859, 866 (11th Cir.2009) (New Jersey statute), cert. denied, - U.S. -, 130 S.Ct. 2392, 176 L.Ed.2d 782 (2010); United States v. Charles, 576 F.3d 1060, 1068-69 (10th Cir.) (18 U.S.C. § 751), cert. denied, - U.S. -, 130 S.Ct. 1027, 175 L.Ed.2d 628 (2009); United States v. Mills, 570 F.3d 508, 511-12 (2d Cir.2009) (Connecticut statute); United States v. Pratt, 568 F.3d 11, 19-21 (1st Cir.) (New Hampshire statute), cert. denied, -U.S. -, 130 S.Ct. 425, 175 L.Ed.2d 291 (2009); United States v. Ford, 560 F.3d 420, 426 (6th Cir. 2009) (Kentucky statute); United States v. Piccolo, 441 F.3d 1084, 1089-90 (9th Cir.2006) (18 U.S.C. § 751).

. Our prior remand order also raised the question whether § 575.210 is over-inclusive under Pearson because it includes failure to return offenses, noting that the last sentence of § 217.390 provides that an offender placed on "escape” status for failing to return to, for example, a halfway house, "shall be sentenced for escape as provided in 575.210.” But that issue is irrelevant here. We conclude that § 575.210 in broadly prohibiting escapes from confinement is potentially over-inclusive; therefore, applying the modified categorical approach, any § 575.210 class D felony conviction for a failure-to-return offense is not a crime of violence under Chambers.

. Prior decisions also focused on the risk of violence when a successful escapee is later recaptured — "[e]ven the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee.” United States v. Nation, 243 F.3d 467, 472 (8th Cir.2001). The Court in Chambers cited United States Sentencing Commission statistics showing only a minimal risk of physical injury when failure-to-report offenders are later apprehended. 129 S.Ct. at 692-93. The government does not rely on this risk of violence, so we put it aside.

. Although we do not read Chambers as requiring the government to present statistical evidence, the Sentencing Commission statistics set forth in Appendix B in Chambers show that offenses for “leaving nonsecure custody” resulted in use of force, use of a dangerous *916 weapon, or injury in approximately 2% of the surveyed cases. Comparing that percentage to available data for burglaries, the risk of physical injury is "serious.” United States v. Templeton, 543 F.3d 378, 381 (7th Cir.2008).