10-1925-cr
United States v. Keith J. Baker

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2011

(Argued: September 22, 2011     Decided:  January 12, 2012)

Docket No. 10-1925-cr

UNITED STATES OF AMERICA,

   *Appellee*,

    v.

KEITH J. BAKER,

   *Defendant-Appellant.*

BEFORE:  POOLER, B.D. PARKER, JR. and CARNEY, *Circuit Judges*.

FOR APPELLEE:   Timothy C. Doherty, Jr., Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, on the brief), for Tristram J. Coffin, United States Attorney, District of Vermont, Burlington, VT.

FOR APPELLANT:   Georgia J. Hinde, New York, NY.

PER CURIAM:

Defendant-Appellant Keith J. Baker appeals from a May 3, 2010 judgment of conviction entered by the United States District Court for the District of Vermont (Murtha, *J*.), following Baker's plea of guilty to possessing a firearm in violation of 18 U.S.C. § 922(g)(1) (felon-in-possession).  The district court found that Baker's criminal history subjected him to a mandatory minimum of 15 years' imprisonment under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and sentenced him accordingly.  On appeal, Baker challenges the district court's

determination that Baker had three or more prior convictions for felonies categorized as "violent" under ACCA, and that he was subject to the ACCA mandatory minimum sentence as a result. We affirm the judgment of the district court.

**BACKGROUND**

The facts relevant to this appeal are not in dispute. In March 2006, a grand jury returned a two-count indictment charging Baker, a convicted felon, with possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Pursuant to a plea agreement, Baker pled guilty to the first count of the indictment.

Baker's Presentence Report ("PSR") advised that he had ten prior felony convictions, and that five of these felonies qualified as "violent" under 18 U.S.C. § 924(e)(2)(B). The PSR concluded that Baker was therefore subject to an enhanced sentence under ACCA. *See* 18 U.S.C. § 924(e)(1). At Baker's sentencing hearing, the district court held that Baker's two burglary offenses, his two escape from custody offenses, and his aiding an escape offense qualified as "violent felony" predicates under 18 U.S.C. § 924(e)(2)(b)(ii), triggering ACCA's mandatory minimum sentence of 15 years' imprisonment. *See* 18 U.S.C. § 924(e)(1). The district court therefore sentenced Baker to 15 years' imprisonment, to be followed by three years of supervised release. Baker timely appealed.

**DISCUSSION**

Under ACCA, "a person who violates [18 U.S.C. § 922(g)] and has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). ACCA defines "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year, or any act of
> juvenile delinquency involving the use or carrying of a firearm, knife, or destructive

device that would be punishable by imprisonment for such term if committed by an adult, that--

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).

Crimes not specifically enumerated in 18 U.S.C. § 924(e)(2)(B)(ii) but that nonetheless "involve[] conduct that presents a serious potential risk of physical injury to another" fall within the final clause of subsection (ii), known as ACCA's "residual clause." *United States v. Johnson*, 616 F.3d 85, 89 (2d Cir. 2010). This clause reaches crimes "typically committed by those whom one normally labels armed career criminals, that is, crimes that show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011) (quoting *Begay v. United States*, 553 U.S. 137, 146 (2008)) (internal quotation marks omitted). An offense of intent that poses roughly the same degree of risk as the enumerated offenses themselves qualifies as a predicate under the residual clause. *See id.* at 2276 ("The felony at issue here is not a strict liability, negligence, or recklessness crime and because it is . . . similar in risk to the [enumerated offenses], it is a crime that 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'") (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).[1]

---

[1] Baker cites no authority, and we are aware of none, holding that escape from a correctional facility or local lockup is a strict liability, negligence, or recklessness crime in Vermont. *Cf. Begay v. United States*, 553 U.S. 137, 145 (2008) (holding that driving under the influence, while posing a serious risk of injury to others, is not an ACCA predicate because "conduct for which the drunk driver is convicted . . . need not be purposeful or deliberate").

In determining whether an offense qualifies as a "violent felony" for ACCA purposes, we begin by employing a "categorical approach." *United States v. Brown*, 629 F.3d 290, 294 (2d Cir. 2011). "Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007) (internal citations and quotation marks omitted). Notably, the categorical approach does not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208. The relevant inquiry is "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *Id.* (emphasis added).

Statutory language defining a criminal offense on occasion may encompass both violent and non-violent felonies. "In such circumstances, we may undertake a limited inquiry into which part of the statute the defendant was convicted of violating, at least where the statute of conviction is divisible in that it 'describe[s] the violent felonies . . . in distinct subsections or elements of a disjunctive list.'" *Brown*, 629 F.3d at 294-95 (quoting *United States v. Daye*, 571 F.3d 225, 229 n.4 (2d Cir. 2009)) (internal citations and quotation marks omitted); *see also Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010). We are constrained in this "modified categorical approach" by the Supreme Court's requirement that we consult only "particular documents that can identify the underlying facts of a prior conviction *with certainty*." *United States v. Rosa*, 507 F.3d 142, 161 (2d Cir. 2007) (emphasis added). In the context of a

conviction obtained through a guilty plea, the sentencing court's inquiry is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). A court may impose ACCA's mandatory minimum sentence only when these sources establish that the guilty plea "necessarily admitted elements of the [predicate] offense." *Id.*

Here, Baker does not dispute that his prior burglaries qualify as ACCA predicates. Baker challenges, rather, the district court's conclusion that his three escape-related offenses qualify as ACCA predicates under the residual clause. We review this question *de novo*. *Daye*, 571 F.3d at 228.

Baker's two escapes from custody and one aiding in escape offense occurred in the State of Vermont. Vermont law defines the felony offense of "escape," in pertinent part, as follows:

(a) A person who, while in lawful custody:

    (1) escapes or attempts to escape from any correctional facility or a local lockup . . . . [or]

(b) A person who, while in lawful custody:

    (1) fails to return from work release to the correctional facility at the specified time, or visits other than the specified place . . . ; [or]

    (2) fails to return from furlough to the correctional facility at the specified time, or visits other than the specified place . . . .

Vt. Stat. Ann. tit. 13, § 1501.[2]

---

[2] Vt. Stat. Ann. tit. 13, § 1501 has not been substantively amended since 1990, the year of the last of Baker's escape convictions.

We have previously recognized that this statute "contains separate provisions specifically criminalizing failure to report for custody as distinguished from escape from custody," and that "failure to report," *id.* § 1501(b)(1)-(2), does not qualify as a violent felony under ACCA's residual clause. *Daye*, 571 F.3d at 236-37; *see also Chambers v. United States*, 555 U.S. 122, 123 (2009) (holding that failure to report for penal confinement is not a violent felony under ACCA); *United States v. Mills*, 570 F.3d 508, 512 (2d Cir. 2009) ("a failure to report or failure to return is not a violent felony under the ACCA"). Baker does not dispute, however, that his prior escape convictions were for escape from custody, Vt. Stat. Ann. tit. 13, § 1501(a)(1), as opposed to failure to report, *id.* § 1501(b)(1)-(2). The charging documents associated with these convictions confirm that Baker's offenses were in violation of section 1501(a)(1). Gov't App. 3, 8.

Baker argues that the district court erred by failing to look beyond these charging documents to determine whether Baker admitted to specific conduct that poses a degree of risk similar to that posed by the offenses enumerated in ACCA, 18 U.S.C. § 924(e)(2)(B). Although the district court was incorrect that it was "supposed to look at the charging document and not go beyond that," Baker's argument fails. The modified categorical approach "permits a court to . . . consult[] the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson*, 130 S. Ct. at 1273. As discussed, the critical issue is whether the judicial record of the defendant's prior conviction establishes that his guilty plea "necessarily admitted elements of the [predicate] offense." *Shepard*, 544 U.S. at 26. If the record of conviction establishes that the defendant admitted the requisite elements of the predicate

offense—as it does here—the court must then determine whether the elements of the generic offense justify the offense's inclusion within the residual provision. *See James*, 550 U.S. at 202. The particular factual circumstances of Baker's prior crimes are irrelevant.

We next consider whether "escape from any correctional facility or a local lock-up," Vt. Stat. Ann. tit. 13, § 1501(a)(1), qualifies as a predicate felony. We ask, in other words, whether the conduct encompassed by the elements of this crime "in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208.

As we have previously observed, prisons are "inherently dangerous institutions, where . . . guards are greatly outnumbered by inmates—many of whom have a history of violence or of aggressive tendencies." *Johnson*, 616 F.3d at 94 (internal citation and quotation marks omitted). In such an atmosphere, an escape attempt could have "explosive consequences[,] . . . creat[ing] a risk that fellow inmates will join in the disturbance, oppose it with force, or simply use its occurrence to engage in other acts of violence." *Id.*

Escape attempts, moreover, present a risk of violent confrontation at least as great as that of a burglary. *See id.* at 89 ("ACCA's residual clause applies only to crimes that are roughly similar . . . *in degree of risk posed*, to the enumerated offenses themselves") (quotation marks and brackets omitted). Escapees and burglars may both employ physical force to prevent interference with their criminal objectives. A homeowner, however, may not be at home or may "decline to confront" a burglar, thus mitigating the potential for violence. *United States v. Parks*, 620 F.3d 911, 915 (8th Cir. 2010). Correctional officers, on the other hand, have "a duty to confront and challenge . . . inmate[s] escaping from confinement," *id.*, increasing the likelihood of a violent encounter. *See also Sykes*, 131 S. Ct. at 2273 ("The attempt to elude

capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase."). This is so in a "local lock-up" as well as in a correctional facility.

Statistics aid our assessment of the degree of risk of violence that escape from custody entails. *See id.* at 2274. A United States Sentencing Commission report cited in *Chambers v. United States*, 555 U.S. at 131, reveals that from 2006 to 2007, 15.6 percent of the 64 reported federal escapes from secure custody involved force; 31.3 percent involved a dangerous weapon; and 10.9 percent involved injury. United States Sentencing Commission, Report on Federal Escape Offenses in Fiscal Years 2006 and 2007, at 7 (2008) ("Commission Report"); *see also United States v. Templeton*, 543 F.3d 378, 382 (7th Cir. 2008) (citing "comprehensive" study on the characteristics of prison escapes, which concluded that "8 % of escapees commit violence against guards in the process of getting away"). By comparison, the Commission Report identified no instances of injury or use of force in 42 cases of failure to report and in 118 cases of failure to return. Commission Report, at 7.[3] These statistics confirm our conclusion that escape from a secure correctional facility or local lock-up, unlike escape by failure to report, presents a serious risk of physical injury. *See Chambers*, 555 U.S. at 127 ("The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody.").

---

[3] According to the report cited in *Chambers*, fewer than two percent of 177 escapes from non-secure custody involved force or injury. United States Sentencing Commission, Report on Federal Escape Offenses in Fiscal Years 2006 and 2007, at 7 (2008). We do not address whether such escapes, in the ordinary case, present a serious potential risk of injury and thereby qualify as ACCA predicates.

We therefore hold that escape from custody in violation of section 1501(a)(1) presents a serious potential risk of injury to another, and that this offense therefore qualifies as a predicate under ACCA's residual clause. *See* 18 U.S.C. § 924(e)(2)(B). Because Baker's two escapes and two burglaries qualify as ACCA predicates, triggering the 15-year minimum sentence requirement, we do not reach the question of whether aiding an escape also qualifies. *See* Vt. Stat. Ann. tit. 13, § 1502(a)(3).

**CONCLUSION**

For the foregoing reasons, we hold that Baker's convictions for escape from custody in violation of section 1501(a)(1) qualify as violent felonies under ACCA. The district court did not err in imposing ACCA's mandatory minimum sentence. The judgment of the district court is AFFIRMED.