# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-2444

_____

United States of America

*Plaintiff - Appellee*

v.

Alfred Tucker

*Defendant - Appellant*

_____

No. 11-2489

_____

United States of America

*Plaintiff - Appellee*

v.

Alfred Tucker

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted:  October 22, 2013
Filed: January 29, 2014

_____

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, SMITH, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges, En Banc.

_____

GRUENDER, Circuit Judge.

After his conviction as a felon in possession of a firearm, Alfred Tucker received an enhanced sentence under the Armed Career Criminal Act ("ACCA"), which applies to those felons guilty of possession of a firearm who have three prior convictions for a violent felony. *See* 18 U.S.C. § 924(e). After a panel of this court affirmed his conviction and sentence, we granted rehearing en banc to address whether Tucker's prior conviction under a Nebraska escape statute qualifies as a violent felony for purposes of the ACCA. Because the elements of the portion of the Nebraska statute under which Tucker was convicted do not, in the ordinary case, encompass conduct that presents a serious potential risk of physical injury to another, a conviction under that portion of the statute cannot serve as a predicate conviction for ACCA purposes. We thus vacate Tucker's sentence and remand for resentencing.

I.

Our prior panel opinion in this case describes the circumstances of Tucker's arrest and conviction. *United States v. Tucker*, 689 F.3d 914, 917 (8th Cir. 2012), *vacated*, Nos. 11-2444/2489 (8th Cir. Jan. 14, 2013). We reinstate this opinion, except for its section II.D regarding Tucker's sentence.

The ACCA applies to defendants who are convicted of being a felon in possession of a firearm after three prior convictions for a violent felony. 18 U.S.C. § 924(e). A violent felony is a felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves

-2-

conduct that presents a serious potential risk of physical injury to another."
§ 924(e)(2)(B). To determine whether a past conviction qualifies as a violent felony, we apply the "categorical approach," under which we "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). However, where a statute of conviction sets out one or more elements of the offense in the alternative, the statute is considered "divisible" for ACCA purposes. *Descamps v. United States*, 570 U.S. ---, 133 S. Ct. 2276, 2281 (2013). If one alternative in a divisible statute qualifies as a violent felony, but another does not, we apply the "modified categorical approach" to determine under which portion of the statute the defendant was convicted. *Id.* "[T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.*

The district court found that Tucker's prior conviction under a Nebraska escape statute qualified as one of the three necessary predicate violent felony convictions under the "otherwise" clause of § 924(e)(2)(B)(ii) because it "involve[d] conduct that presents a serious potential risk of physical injury to another." On appeal, Tucker argued that his escape was a mere "walk-away escape" that could not be considered to present a serious potential risk of physical injury to another, similar to an offense of failure to report back to custody that the Supreme Court held was not a violent felony for ACCA purposes in *Chambers v. United States*, 555 U.S. 122, 127-30 (2009). The panel rejected Tucker's argument based on a prior panel holding that "*Chambers* . . . leaves intact our precedent holding that escape from custody is a crime of violence," 689 F.3d at 920 (quoting *United States v. Pearson*, 553 F.3d 1183, 1186 (8th Cir. 2009)), which we already had applied to the Nebraska statute at issue, *see id.* (citing *United States v. Williams*, 664 F.3d 719, 720 (8th Cir. 2011)).

We granted Tucker's petition for rehearing en banc to consider whether that precedent should be overruled. We also ordered supplemental briefing on two issues:

(1) whether the court may subdivide a statute that is textually indivisible for purposes of applying the modified categorical approach, and (2) if so, how the generic offense of "walk-away escape" should be defined. These questions were designed to help us decide whether to adopt the approach of our panel in *United States v. Parks*, 620 F.3d 911, 915 (8th Cir. 2010), which relied on the non-statutory categories of "escape from a secured and guarded facility and escape from an unsecured facility" to determine, through the modified categorical approach, whether a conviction for escape from custody under a Missouri statute qualified as a "crime of violence" pursuant to the United States Sentencing Guidelines career offender provision.[1] Subsequent to our order, the Supreme Court in *Descamps* addressed whether a court may subdivide a statute that is textually indivisible, and both parties received the opportunity to discuss *Descamps* in supplemental briefing. In light of *Descamps*, we also directed the parties to address whether, if the relevant portion of the Nebraska escape statute is indivisible, the conduct encompassed by the elements of that offense, in the ordinary case, presents a serious potential risk of physical injury to another person.

## II.

The statute under which Tucker was convicted provides as follows:

(1) A person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following

---

[1]The definition of "crime of violence" for the sentencing guidelines career offender provision, *see* U.S.S.G. § 4B1.2(a)(2), contains an "otherwise" clause similar to that in § 924(e)(2)(B)(ii). Although "separate analysis" is necessary to ensure that there is no reason to distinguish between these two definitions, *United States v. Ross*, 613 F.3d 805, 807-09 (8th Cir. 2010), we use the same modified categorical approach to determine whether a past conviction qualifies as a "crime of violence" under the sentencing guidelines. *Cf. Marrero v. United States*, 133 S. Ct. 2732 (2013) (remanding a sentencing guidelines case for further consideration in light of *Descamps*).

temporary leave granted for a specific purpose or limited period. Official detention shall mean arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but official detention does not include supervision of probation or parole or constraint incidental to release on bail.

* * *

(4) Except as provided in subsection (5) of this section, escape is a Class IV felony.

(5) Escape is a Class III felony where:

> (a) The detainee was under arrest for or detained on a felony charge or following conviction for the commission of an offense; or
>
> (b) The actor employs force, threat, deadly weapon, or other dangerous instrumentality to effect the escape; or
>
> (c) A public servant concerned in detention of persons convicted of crime purposely facilitates or permits an escape from a detention facility or from transportation thereto.

Neb. Rev. Stat. § 28-912.

The statute is divisible because it provides as alternative grounds for conviction "unlawful[] remov[al] . . . from official detention" and "fail[ure] to return to official detention following temporary leave granted for a specific purpose or limited period." § 28-912(1). The modified categorical approach can be used to identify which of these alternatives was the basis for a conviction under § 28-912. Of course, following *Chambers*, it is clear that a conviction for failure to return to official detention is not

a violent felony. Here, however, there is no dispute that Tucker was convicted on the basis of unlawfully removing himself from official detention, rather than a failure to return.

The statute is further divisible because the definition of "official detention" provides several alternative grounds for conviction, in that the detention from which a defendant removed himself could have been "arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes," excepting "supervision of probation or parole or constraint incidental to release on bail." *Id.*[2] The modified categorical approach can be used to distinguish among the alternative reasons for "detention" as well—detention for "conviction of crime," detention for a person "found to be delinquent," detention "for extradition," etc. *Id.* In this case, it is undisputed that Tucker was convicted on the basis of escape from "detention in . . . any facility for custody of persons under . . . conviction of crime . . . or for persons . . . found to be delinquent."[3] *Id.* In particular, during the plea colloquy for Tucker's escape conviction, *see Shepard v. United States*, 544 U.S. 13, 16 (2005) (permitting a sentencing court to examine, *inter alia*, the transcript of a plea colloquy in determining the character of a previous conviction), the State offered as a factual

---

[2]The statute also is divisible in other respects. For example, a conviction for a Class III felony under subsection 5(b) for the use of "force, threat, deadly weapon, or other dangerous instrumentality to effect the escape" is a category that would merit consideration as a violent felony. However, such other potential categories are not relevant to the instant case because Tucker was convicted of a Class IV felony.

[3]Although the statute provides multiple reasons for "detention," the parties focused only on detention for conviction of a crime and detention after being found delinquent. For purposes of determining whether Tucker's escape conviction qualifies as a violent felony, we do not need to determine the specific reason for Tucker's detention because our analysis is not dependent on the reason for the detention. *See* Part III *infra*.

-6-

basis for the plea that Tucker removed himself from a Youth Treatment and Rehabilitation Center by running away from a "group returning from the gymnasium . . . as they were getting near their cottage" and that Tucker "had not had permission to be off campus at that time."

The Government concedes that the portion of the statute under which Tucker was convicted applies to removing oneself from any type of detention facility, from the most heavily secured and guarded penitentiaries to relatively non-secure community-based housing facilities (often referred to as halfway houses). We ordered the parties to submit supplemental briefing as to whether a court could extend the modified categorical approach and split this basis for conviction into non-statutory categories such as "escape from a secured and guarded facility" and "escape from an unsecured facility," an approach that had been taken in some of our sister circuits and adopted by our panel in *Parks*.

After we ordered briefing, however, the Supreme Court rejected such an approach in *Descamps*. *Descamps* arose under the portion of § 924(e)(2)(B)(ii) that specifically enumerates certain crimes as violent felonies. 133 S. Ct. at 2281. Because Tucker's offense of conviction is not one of those enumerated crimes and does not have the requisite element of force under § 924(e)(2)(B)(i), the violent-felony determination here is made pursuant to the "otherwise" clause of § 924(e)(2)(B)(ii). Although *Descamps* arose under a different clause of the ACCA—the enumerated crimes clause—we can discern no reason not to apply it here. In *Descamps*, the Court cited three reasons that weigh against creating, for ACCA purposes, alternative categories not expressly established in the underlying statute, all of which apply with equal force to our analysis under the "otherwise" clause. First, such an approach would conflict with the text of the ACCA, which penalizes three "convictions" for, rather than three commissions of, a violent felony. *See* 133 S. Ct. at 2287. Second, it would invite sentencing courts to make findings of fact that properly belong to juries under the Sixth Amendment. *See id.* at 2288-89.

Third, it would introduce practical difficulties and potential unfairness by pinning the finding of a violent felony to how well certain facts collateral to the underlying conviction were established and preserved in documents created for a different purpose. *See id*. at 2289. We thus apply *Descamps* here. Accordingly, the portion of the statute under which Tucker was convicted is indivisible as between escape from secure custody and escape from non-secure custody. We overrule *Parks* to the extent that it authorizes applying the modified categorical approach to anything other than explicitly divisible portions of statutes.

III.

Because the portion of the Nebraska statute under which Tucker was convicted is textually indivisible as between escape from secure custody and escape from non-secure custody, we now examine whether "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James v. United States*, 550 U.S. 192, 208 (2007). In doing so, we consider whether the crime of conviction presents an "inherent" risk of violence "as a categorical matter," similar to the risk of violence associated with the enumerated offenses in § 924(e)(2)(B)(ii)—burglary, extortion, arson, and crimes involving use of explosives. *Sykes v. United States*, 564 U.S. ---, 131 S. Ct. 2267, 2273-74 (2011). "[C]ommonsense" may inform the analysis, and reliable injury statistics for committed offenses, although "not dispositive," are helpful in determining whether the conduct encompassed by the elements of the offense presents a serious potential risk of physical injury. *See id.* at 2274.

Here, common sense suggests that removing oneself from a secured and guarded facility presents a significant likelihood of "confrontation leading to violence," akin to the risk associated with burglary. *See id.* On the other hand, common sense suggests that such risks are much less if one is "removing oneself"

from a halfway house, where one is unconstrained by locked doors or physical barriers, often under no surveillance, and where no armed guards are tasked with preventing such departures. In those circumstances, the conduct is more analogous to a failure to report back to custody after authorized leave, in which "an individual . . . would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." *See Chambers*, 555 U.S. at 128. Common sense thus indicates that the portion of the statute under which Tucker was convicted encompasses both conduct that does and conduct that does not present a serious potential risk of physical injury to another. Because this indivisible portion of the statute can be violated under diverse levels of security, some of which present a serious potential risk of physical injury and others that do not, we cannot say that a conviction under that portion of the statute could be considered to present a serious potential risk of injury to another in the "ordinary" case. *See James*, 550 U.S. at 208.

Neither party has offered any statistics to suggest how often convictions for unlawfully removing oneself from official detention under the Nebraska escape statute are based on each of these modes or how often each mode results in an injury. In the absence of other data, we agree with the parties that the analogous statistics for federal escape offenses cited in *Chambers* are instructive. For the 177 reported federal escape cases based on leaving non-secure custody, an injury was reported in only three cases, *Chambers*, 555 U.S. at 131 (Appendix B to Opinion of the Court), tending to confirm the conclusion that this mode of violating the Nebraska statute typically does not present a serious risk of injury to another. Moreover, cases based on leaving non-secure custody occurred about 2.7 times as often as cases based on leaving secure custody. *See id.* Given that federal escape statistics show that nearly three-fourths of convictions for removing oneself from custody are based on leaving non-secure custody and that injury occurs in fewer than two percent of those cases, we cannot say that unlawfully removing oneself from a detention facility, in the

ordinary case, presents a potential risk of injury of the same order of magnitude as the risks associated with the enumerated offenses in § 924(e)(2)(B)(ii). *See Sykes*, 131 S. Ct. at 2273-74.

Accordingly, a conviction under this portion of the Nebraska escape statute does not qualify as a violent felony under the "otherwise" clause of § 924(e)(2)(B)(ii).[4] We overrule our panel decisions in *Pearson* and *Williams* to the extent they differ from this conclusion.

## IV.

For the reasons discussed above, we vacate Tucker's sentence and remand for resentencing in accordance with this opinion.

LOKEN, Circuit Judge, concurring in the judgment.

I decline to adopt the court's broad reading of Descamps v. United States, 133 S. Ct. 2276 (2013), which seems both premature and unnecessary to reach the proper disposition of this appeal.

The Armed Career Criminal Act defines classes of prior convictions that qualify as "violent felonies" when sentencing a person convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). One section of the statute, 18 U.S.C. § 924(e)(2)(B)(ii), has two distinct subparts:

---

[4]We make no holding as to the other divisible portions of the Nebraska escape statute, including those based on alternative definitions of "official detention" as, for example, detention pursuant to an arrest.

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that --

* * * * *

(ii) *is* burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct* that presents a serious potential risk of physical injury to another.

(Emphasis added.)

The Supreme Court developed its interpretation of § 924(e)(2)(B)(ii) in cases involving the first subpart, the enumerated crimes clause. In the seminal case of Taylor v. United States, 495 U.S. 575 (1990), the Court adopted a "modified categorical approach" to determine whether a prior conviction was for burglary, one of the enumerated offenses: "an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." Id. at 602. In Shepard v. United States, 544 U.S. 13, 26 (2005), the Court reaffirmed Taylor and defined what state court documents a federal court may consider "to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense" enumerated in § 924(e)(2)(B)(ii).

Like Taylor and Shepard, Descamps concerned proper application of the enumerated crimes subpart to a prior state court burglary conviction. The Massachusetts statutes at issue in Shepard were overbroad ("nongeneric") because they prohibited unlawful entry into a "ship, vessel or vehicle," as well as a building. 544 U.S. at 31 (O'Connor, J., dissenting). On the other hand, the California statute at issue in Descamps was overbroad because it "does not require the entry to have

-11-

been unlawful in the way most burglary laws do. . . . It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours." 133 S. Ct. at 2282. This overbreadth was "indivisible," the Court concluded, and therefore the modified categorical approach of Taylor and Shepard "has no role to play in this case. The dispute here does not concern any list of alternative [statutory] elements. Rather, it involves a simple discrepancy between generic burglary and the crime established in § 459 [of the California Penal Code]." Id. at 2285. Agreeing with the dissenting judges in the en banc Ninth Circuit decision in United States v. Aguila-Montes de Oca, 655 F.3d 915 (2011), the Court held: "Because generic unlawful entry is not an element, or an alternative element, of § 459, a conviction under that statute is never for generic burglary." 133 S. Ct. at 2293.

Descamps did not concern the residual "otherwise involves" subpart of 18 U.S.C. § 924(e)(2)(B)(ii). Nevertheless, our court confidently asserts, "we can discern no reason not to apply it here." Though there are good reasons to draw this inference, I am not so sure it is correct.

The Supreme Court first applied its categorical approach to the residual clause in James v. United States, 550 U.S. 192, 202-204 (2007), which involved the Florida offense of attempted burglary. In determining "whether attempted burglary, as defined by Florida law, is an offense that 'involves conduct that presents a serious potential risk of physical injury to another," the Court declared, without discussing the textual differences between the two subparts: "we employ the 'categorical approach' that this Court has taken with respect to other offenses under the ACCA." Id. at 201-02. Since its decision in James, a rather badly divided Court has applied the categorical approach in three other residual clause cases. Each time, the Court repeated "that, for purposes of ACCA's definitions, it is the generic sense of the word 'felony' that counts." In other words, the statute "refer[s] to a crime as generally committed," not as the defendant now being sentenced for a federal firearm offense

committed it on a particular occasion. Chambers v. United States, 555 U.S. 122, 125 (2009) (failure to report); see Sykes v. United States, 131 S. Ct. 2267, 2272 (2011) (vehicular flight from an officer); Begay v. United States, 553 U.S. 137, 141 (2008) (felony DWI).

As a circuit court, we must of course follow the Supreme Court's emphatic adherence to the generic or categorical approach in applying both subparts of 18 U.S.C. § 924(e)(2)(B)(ii). But that is not the end of the inquiry. We must also carefully examine *how* the Court employed this approach in the cases most closely resembling the one now before us. To avoid construing the ACCA's harsh sentencing enhancement too broadly, the Court's first step has been "to choose the right category" of offenses and then decide whether the crime, as so categorized, satisfies the ACCA's definition of violent felony "in the ordinary case." Chambers, 555 U.S. at 126; James, 550 U.S. at 208. In its four prior residual clause cases, the Court's challenge has been deciding whether Congress intended to *include* the generic statutory offense at issue in its definition of "violent felony." In two of those cases, Sykes and Chambers, the state statute subdivided the offense in a way that made it easy for the Court to apply the modified categorical approach to violations of a narrow universe of crimes in the ordinary case. See Sykes, 131 S. Ct. at 2271, 2273; Chambers, 555 U.S. at 126.

This case is different. The Nebraska Legislature -- not focusing on future federal sentencing issues -- included all escapes from "official detention" in a single statutory provision. Neb. Rev. Stat. § 28-912. That provision encompasses escapes from a maximum security prison by eluding its armed guards (for example, by tunneling under or climbing over the outer wall late at night), an offense that surely meets the statutory standard in the residual clause -- "conduct that presents a serious potential risk of physical injury to another." The Nebraska statute also includes so-called "walk-away" offenses, such as Tucker running away from a youth treatment

center, which I agree should not be predicate ACCA offenses under the residual clause. As neither of these extremes is the "ordinary case," applying the rigid divisible/non-divisible test of Descamps results either in excluding violent felonies that Congress intended to include, or including non-violent felonies that should be excluded. No prior residual clause case confronted the Supreme Court with this interpretive dilemma. One might ask, isn't that just what the Court did in Descamps when it excluded all California burglaries, including the most violent? From that standpoint, the situations may be parallel. But the textual differences in the two subparts of § 924(e)(2)(B)(ii) may make a difference. In Descamps, the Court merely held that a violation of the California statute at issue *is not* the enumerated offense of generic burglary. The residual clause does not address enumerated offenses; Congress expressly included *any* felony that "involves conduct that presents a serious potential risk of physical injury to another." Thus, there is no enumerated crime of escape that a court may define generically and then compare to the Nebraska statute.

There is no clear signal the Court would decide that this textual difference does not affect whether the modified categorical approach applies in this type of residual clause case. No doubt intentionally, I infer, the majority in Descamps carefully limited its discussion to the enumerated crimes clause and explicitly noted it was not presented with the question whether defendant's prior California burglary conviction could be a "violent felony" under the residual clause. 133 S. Ct. at 2293 n.6. Justice Kennedy's concurrence likewise approached the issue narrowly and expressed concern about establishing a rule that would require extensive redrafting of state criminal statutes. Id. at 2293-94. And Justice Alito's dissent explained how the modified categorical approach could be applied to a broad state statute that has a single, indivisible set of elements. Id. at 2299, 2302. The Court's prior residual clause cases have not addressed this question, but more generally, Justice Scalia has criticized these cases as "ad hoc judgment[s]" that fail to clarify the residual clause. Sykes, 131 S. Ct. at 2284 (Scalia, J., dissenting). With this array of disparate

-14-

opinions, it seems almost as difficult to predict how the Court will resolve this issue as it was to anticipate its decision in United States v. Booker, 543 U.S. 220 (2005).

In my view, this doctrinal uncertainty does not make the decision in this case difficult because Tucker must be resentenced whatever analytical approach governs. If the Descamps divisibility analysis applies to residual clause offenses, I agree with the court that Tucker must prevail. Likewise, he must prevail if the modified categorical approach as we applied it in United States v. Parks is the governing standard because Tucker's prior conviction under Neb. Rev. Stat. § 28-912 is easily categorized as an escape from an unsecure facility. 620 F.3d 911, 915 (8th Cir. 2010), cert. denied, 132 S. Ct. 125 (2011).

There are more radical approaches the Supreme Court might take in applying the residual clause, but they would also require the same disposition of this appeal. Justice Scalia might persuade a majority of his colleagues that the residual clause is unconstitutionally vague. See Derby v. United States, 131 S. Ct. 2858, 2860 (Scalia, J., dissenting from the denial of four certiorari petitions). Justice Thomas might at long last persuade a majority that the protections of Apprendi v. New Jersey, 530 U.S. 466 (2000), should apply to ACCA sentencing enhancements. See Descamps, 133 S. Ct. at 2294-95 (Thomas, J., concurring); Shepard, 544 U.S. at 27 (Thomas, J., concurring). Or the Court's frustration with the "nearly impossible" task of applying the categorical approach to the residual clause, combined with continuing congressional inaction, might prompt the Court to adopt a completely new approach. See Chambers, 555 U.S. at 133-34 (Alito, J., concurring). I do not venture to predict how the Court will decide its next residual clause case. I simply conclude it is premature to broadly apply Descamps beyond the enumerated-offense boundaries of that decision when applying our prior ruling in Parks would properly decide this case.

For these reasons, I concur in the court's decision to vacate Tucker's sentence and remand for resentencing.

_____