GRUENDER, Circuit Judge.
After his conviction as a felon in possession of a firearm, Alfred Tucker received an enhanced sentence under the Armed Career Criminal Act (“ACCA”), which applies to those felons guilty of possession of a firearm who have three prior convictions for a violent felony. See 18 U.S.C. § 924(e). After a panel of this court affirmed his conviction and sentence, we granted rehearing en banc to address whether Tucker’s prior conviction under a Nebraska escape statute qualifies as a violent felony for purposes of the ACCA. Because the elements of the portion of the Nebraska statute under which Tucker was convicted do not, in the ordinary case, encompass conduct that presents a serious potential risk of physical injury to another, a conviction under that portion of the statute cannot serve as a predicate conviction for ACCA purposes. We thus vacate Tucker’s sentence and remand for resen-tencing.
I.
Our prior panel opinion in this case describes the circumstances of Tucker’s arrest and conviction. United States v. Tucker, 689 F.3d 914, 917 (8th Cir.2012), vacated, Nos. 11-2444/2489 (8th Cir. Jan. 14, 2013). We reinstate this opinion, except for its section II.D regarding Tucker’s sentence.
The ACCA applies to defendants who are convicted of being a felon in possession of a firearm after three prior convictions for a violent felony. 18 U.S.C. § 924(e). A violent felony is a felony that “(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B). To determine whether a past conviction qualifies as a violent felony, we apply the “categorical approach,” under which we “look only to the fact of conviction and the statutory definition of the prior offense.” Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). However, where a statute of conviction sets out one or more elements of the offense in the alternative, the statute is considered “divisible” for ACCA purposes. Descamps v. United States, 570 U.S.-, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013). If one alternative *1180 in a divisible statute qualifies as a violent felony, but another does not, we apply the “modified categorical approach” to determine under which portion of the statute the defendant was convicted. Id. “[T]he modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant’s prior conviction.” Id.
The district court found that Tucker’s prior conviction under a Nebraska escape statute qualified as one of the three necessary predicate violent felony convictions under the “otherwise” clause of § 924(e)(2)(B)(ii) because it “involvefd] conduct that presents a serious potential risk of physical injury to another.” On appeal, Tucker argued that his escape was a mere “walk-away escape” that could not be considered to present a serious potential risk of physical injury to another, similar to an offense of failure to report back to custody that the Supreme Court held was not a violent felony for ACCA purposes in Chambers v. United States, 555 U.S. 122, 127-30, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). The panel rejected Tucker’s argument based on a prior panel holding that “Chambers ... leaves intact our precedent holding that escape from custody is a crime of violence,” 689 F.3d at 920 (quoting United States v. Pearson, 553 F.3d 1183, 1186 (8th Cir.2009)), which we already had applied to the Nebraska statute at issue, see id. (citing United States v. Williams, 664 F.3d 719, 720 (8th Cir. 2011)).
We granted Tucker’s petition for rehearing en banc to consider whether that precedent should be overruled. We also ordered supplemental briefing on two issues: (1) whether the court may subdivide a statute that is textually indivisible for purposes of applying the modified categorical approach, and (2) if so, how the generic offense of “walk-away escape” should be defined. These questions were designed to help us decide whether to adopt the approach of our panel in United States v. Parks, 620 F.3d 911, 915 (8th Cir.2010), which relied on the non-statutory categories of “escape from a secured and guarded facility and escape from an unsecured facility” to determine, through the modified categorical approach, whether a conviction for escape from custody under a Missouri statute qualified as a “crime of violence” pursuant to the United States Sentencing Guidelines career offender provision.[1] Subsequent to our order, the Supreme Court in Descamps addressed whether a court may subdivide a statute that is textually indivisible, and both parties received the opportunity to discuss Descamps in supplemental briefing. In light of Descamps, we also directed the parties to address whether, if the relevant portion of the Nebraska escape statute is indivisible, the conduct encompassed by the elements of that offense, in the ordinary case, presents a serious potential risk of physical injury to another person.
II.
The statute under which Tucker was convicted provides as follows:
*1181 (1) A person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. Official detention shall mean arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but official detention does not include supervision of probation or parole or constraint incidental to release on bail.
(4) Except as provided in subsection (5) of this section, escape is a Class IV felony.
(5) Escape is a Class III felony where:
(a) The detainee was under arrest for or detained on a felony charge or following conviction for the commission of an offense; or
(b) The actor employs force, threat, deadly weapon, or other dangerous instrumentality to effect the escape; or
(c) A public servant concerned in detention of persons convicted of crime purposely facilitates or permits an escape from a detention facility or from transportation thereto.
Neb.Rev.Stat. § 28-912.
The statute is divisible because it provides as alternative grounds for conviction “unlawful ] remov[al] ... from official detention” and “fail[ure] to return to official detention following temporary leave granted for a specific purpose or limited period.” § 28-912(1). The modified categorical approach can be used to identify which of these alternatives was the basis for a conviction under § 28-912. Of course, following Chambers, it is clear that a conviction for failure to return to official detention is not a violent felony. Here, however, there is no dispute that Tucker was convicted on the basis of unlawfully removing himself from official detention, rather than a failure to return.
The statute is further divisible because the definition of “official detention” provides several alternative grounds for conviction, in that the detention from which a defendant removed himself could have been “arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes,” excepting “supervision of probation or parole or constraint incidental to release on bail.” Id.[2] The modified categorical approach can be used to distinguish among the alternative reasons for “detention” as well — detention for “conviction of crime,” detention for a person “found to be delinquent,” detention “for extradition,” etc. Id. In this case, it is undisputed that Tucker was convicted on the basis of escape from “detention in ... any facility for custody of persons under ... conviction of crime ... or for persons ... found to be delinquent.”[3] Id. In par *1182 ticular, during the plea colloquy for Tucker’s escape conviction, see Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (permitting a sentencing court to examine, inter alia, the transcript of a plea colloquy in determining the character of a previous conviction), the State offered as a factual basis for the plea that Tucker removed himself from a Youth Treatment and Rehabilitation Center by running away from a “group returning from the gymnasium ... as they were getting near their cottage” and that Tucker “had not had permission to be off campus at that time.”
The Government concedes that the portion of the statute under which Tucker was convicted applies to removing oneself from any type of detention facility, from the most heavily secured and guarded penitentiaries to relatively non-secure community-based housing facilities (often referred to as halfway houses). We ordered the parties to submit supplemental briefing as to whether a court could extend the modified categorical approach and split this basis for conviction into nonstatutory categories such as “escape from a secured and guarded facility” and “escape from an unsecured facility,” an approach that had been taken in some of our sister circuits and adopted by our panel in Parks.
After we ordered briefing, however, the Supreme Court rejected such an approach in Descamps. Descamps arose under the portion of § 924(e)(2)(B)(ii) that specifically enumerates certain crimes as violent felonies. 133 S.Ct. at 2281. Because Tucker’s offense of conviction is not one of those enumerated crimes and does not have the requisite element of force under § 924(e)(2)(B)®, the violent-felony determination here is made pursuant to the “otherwise” clause of § 924(e)(2)(B)(ii). Although Descamps arose under a different clause of the ACCA — the enumerated crimes clause — we can discern no reason not to apply it here. In Descamps, the Court cited three reasons that weigh against creating, for ACCA purposes, alternative categories not expressly established in the underlying statute, all of which apply with equal force to our analysis under the “otherwise” clause. First, such an approach would conflict with the text of the ACCA, which penalizes three “convictions” for, rather than three commissions of, a violent felony. See 133 S.Ct. at 2287. Second, it would invite sentencing courts to make findings of fact that properly belong to juries under the Sixth Amendment. See id. at 2288-89. Third, it would introduce practical difficulties and potential unfairness by pinning the finding of a violent felony to how well certain facts collateral to the underlying conviction were established and preserved in documents created for a different purpose. See id. at 2289. We thus apply Descamps here. Accordingly, the portion of the statute under which Tucker was convicted is indivisible as between escape from secure custody and escape from non-secure custody. We overrule Parks to the extent that it authorizes applying the modified categorical approach to anything other than explicitly divisible portions of statutes.
III.
Because the portion of the Nebraska statute under which Tucker was convicted is textually indivisible as between escape from secure custody and escape from nonsecure custody, we now examine whether “the conduct encompassed *1183 by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.” James v. United States, 550 U.S. 192, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). In doing so, we consider whether the crime of conviction presents an “inherent” risk of violence “as a categorical matter,” similar to the risk of violence associated with the enumerated offenses in § 924(e)(2)(B)(ii)— burglary, extortion, arson, and crimes involving use of explosives. Sykes v. United States, 564 U.S. -, 131 S.Ct. 2267, 2273-74, 180 L.Ed.2d 60 (2011). “[C]om-monsense” may inform the analysis, and reliable injury statistics for committed offenses, although “not dispositive,” are helpful in determining whether the conduct encompassed by the elements of the offense presents a serious potential risk of physical injury. See id. at 2274.
Here, common sense suggests that removing oneself from a secured and guarded facility presents a significant likelihood of “confrontation leading to violence,” akin to the risk associated with burglary. See id. On the other hand, common sense suggests that such risks are much less if one is “removing oneself’ from a halfway house, where one is unconstrained by locked doors or physical barriers, often under no surveillance, and where no armed guards are tasked with preventing such departures. In those circumstances, the conduct is more analogous to a failure to report back to custody after authorized leave, in which “an individual ... would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct.” See Chambers, 555 U.S. at 128, 129 S.Ct. 687. Common sense thus indicates that the portion of the statute under which Tucker was convicted encompasses both conduct that does and conduct that does not present a serious potential risk of physical injury to another. Because this indivisible portion of the statute can be violated under diverse levels of security, some of which present a serious potential risk of physical injury and others that do not, we cannot say that a conviction under that portion of the statute could be considered to present a serious potential risk of injury to another in the “ordinary” case. See James, 550 U.S. at 208, 127 S.Ct. 1586.
Neither party has offered any statistics to suggest how often convictions for unlawfully removing oneself from official detention under the Nebraska escape statute are based on each of these modes or how often each mode results in an injury. In the absence of other data, we agree with the parties that the analogous statistics for federal escape offenses cited in Chambers are instructive. For the 177 reported federal escape cases based on leaving non-secure custody, an injury was reported in only three cases, Chambers, 555 U.S. at 131, 129 S.Ct. 687 (Appendix B to Opinion of the Court), tending to confirm the conclusion that this mode of violating the Nebraska statute typically does not present a serious risk of injury to another. Moreover, cases based on leaving non-secure custody occurred about 2.7 times as often as cases based on leaving secure custody. See id. Given that federal escape statistics show that nearly three-fourths of convictions for removing oneself from custody are based on leaving non-secure custody and that injury occurs in fewer than two percent of those cases, we cannot say that unlawfully removing oneself from a detention facility, in the ordinary case, presents a potential risk of injury of the same order of magnitude as the risks associated with the enumerated offenses in § 924(e)(2)(B)(ii). See Sykes, 131 S.Ct. at 2273-74.
Accordingly, a conviction under this portion of the Nebraska escape statute does not qualify as a violent felony under the *1184 “otherwise” clause of § 924(e)(2)(B)(ii).[4] We overrule our panel decisions in Pearson and Williams to the extent they differ from this conclusion.
rv.
For the reasons discussed above, we vacate Tucker’s sentence and remand for resentencing in accordance with this opinion.

. The definition of "crime of violence” for the sentencing guidelines career offender provision, see U.S.S.G. § 4B1.2(a)(2), contains an "otherwise” clause similar to that in § 924(e)(2)(B)(ii). Although "separate analysis” is necessary to ensure that there is no reason to distinguish between these two definitions, United States v. Ross, 613 F.3d 805, 807-09 (8th Cir.2010), we use the same modified categorical approach to determine whether a past conviction qualifies as a "crime of violence” under the sentencing guidelines. Cf. Marrero v. United States, — U.S.-, 133 S.Ct. 2732, 186 L.Ed.2d 930 (2013) (remanding a sentencing guidelines case for further consideration in light of Descamps).

. The statute also is divisible in other respects. For example, a conviction for a Class III felony under subsection 5(b) for the use of "force, threat, deadly weapon, or other dangerous instrumentality to effect the escape” is a category that would merit consideration as a violent felony. However, such other potential categories are not relevant to the instant case because Tucker was convicted of a Class IV felony.

. Although the statute provides multiple reasons for “detention,” the parties focused only on detention for conviction of a crime and detention after being found delinquent. For purposes of determining whether Tucker’s es *1182 cape conviction qualifies as a violent felony, we do not need to determine the specific reason for Tucker's detention because our analysis is not dependent on the reason for the detention. See Part III infra.

. We make no holding as to the other divisible portions of the Nebraska escape statute, including those based on alternative definitions of “official detention” as, for example, detention pursuant to an arrest.